IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| RODNEY MAHAN, JOHN H. HENLEY, III, JOEL BARTON, JR., AND JOHN RIGGINS, *Plaintiffs* | § § § § § | |
| V. | § § | CIVIL ACTION NO. _____ |
| THE TEXAS DEPARTMENT OF PUBLIC SAFETY *Defendant* | § § § § | JURY DEMANDED |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiffs, Rodney Mahan, John H. Henley, III, Joel Barton, Jr., and John Riggins ("Plaintiffs" or the "Troopers"), file this Complaint and would respectfully show the Court as follows:

### NATURE OF THE CASE

1. Four veteran Texas Department of Public Safety Troopers reported to their immediate superiors and then to the Office of the Inspector General that Department of Public Safety Sergeant Robert Shugart was enforcing an unlawful quota system for arrests and traffic stops at the Nacogdoches duty station, whereby officers under Sgt. Shugart's command were expected to make more than a certain number of arrests and traffic stops or be subjected to ridicule and harassment by Sgt. Shugart—a clear violation of Texas law.  Sgt. Shugart also offered monetary and other prizes to the troopers that had the most arrests and traffic stops in a period, in violation of Texas law and Texas Department of Public Safety policy.

2. Following their reporting of Sgt. Shugart's unlawful activity, Sgt. Shugart and others within the Texas Department of Public Safety--including senior members of the department's

leadership—undertook a systematic campaign of retaliation and intimidation to silence and punish the Troopers for speaking out about the unlawful quota system.  Among other acts of retaliation, the Troopers were transferred to other duty stations away from their families, denied promotion opportunities, violently berated in front of others, denied vacation, and forced to work dangerously long hours, all in violation of policy.

3.     The Troopers file suit pursuant to 42 U.S.C. § 1983 for violations of their First Amendment right to free speech and their First amendment right to petition.  The Troopers also file suit for violations of Texas Whistleblower Protection Act.

## PARTIES

4.     Plaintiff Rodney Mahan is a Corporal with the Texas Department of Public Safety.  Corporal Mahan has 32 years of service with the Texas Department of Public Safety.  Corporal Mahan resides in Nacogdoches County, Texas.

5.     Plaintiff John H. Henley, III is a Senior Trooper with the Texas Department of Public Safety.  Trooper Henley has 25 years of service with the Texas Department of Public Safety.  Senior Trooper Henley resides in Nacogdoches County, Texas.

6.     Plaintiff Joel Barton, Jr. is a Trooper III with the Texas Department of Public Safety.  Trooper Barton has 12 years of service with the Texas Department of Public Safety.  Trooper Barton resides in Nacogdoches County, Texas.

7.     Plaintiff John Riggins is a Trooper with the Texas Department of Public Safety.  Trooper Riggins has 16 years of service with the Texas Department of Public Safety.  Trooper Riggins resides in Nacogdoches County, Texas.

8.     Defendant THE TEXAS DEPARTMENT OF PUBLIC SAFETY ("Defendant" or "DPS") is an agency of the State of Texas.  As such, it may be served with process by serving Steven P.

Mach, Chairman of the Public Safety Commission, at P.O. Box 130630, Houston Texas 77219-0630.  DPS may also be served with process through its Director, Steven C. McCraw, at 5805 North Lamar Blvd., Austin, Texas 78752, or PO Box 4087, Austin TX 78773.

## JURISDICTION AND VENUE

9.  Pursuant to 28 U.S.C. §§ 1331 and 1343, this Court has federal question jurisdiction because the action is brought pursuant to 28 U.S.C. § 1983 for violations of Plaintiffs' rights guaranteed to them by the United States Constitution.

10.  Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's claims based on Texas law.

11.  Venue is proper in the U.S. District Court for the Eastern District of Texas, Lufkin Division, pursuant to 28 U.S.C. §1391(b) because the unlawful practices alleged below were committed therein.

## CONDITIONS PRECEDENT

12.  All conditions precedent has been performed or have occurred.

## FACTS

**A.   Sgt. Shugart arrived at the Nacogdoches duty station and implemented an illegal quota system for arrests and traffic stops and awarded cash prizes to troopers who had the most arrests and traffic stops.**

13.  Upon his arrival at the Nacogdoches Duty Station in 2017, DPS Sergeant Robert Shugart began to implement a "program" where Troopers under his command were expected to make a certain amount of arrests and traffic stops each month.  Sgt. Shugart also began holding competitions where Troopers were given prizes, including cash prizes, gift cards, and coolers, for the highest number of arrests and traffic stops.  In these "competitions," officers in the same small office were pitted against each other.  Troopers with the highest numbers of arrests and citations

were rewarded, while troopers with the lowest numbers of arrests and citations were harassed, ridiculed, and denied benefits by Shugart.

14. For example, in February 2018, Sgt. Shugart and Captain Michelle McDaniel, the area commander, held an award's ceremony and gave a gift card, tumbler, and a plaque to a trooper in the Nacogdoches office for the most criminal arrests in the area.

15. Quota systems, like Sgt. Shugart's, that evaluate, promote, compensate, or discipline peace officers based on a predetermined or specified numbers of traffic violations are **illegal** under Texas law. *See* TEX. TRANSP. CODE § 720.002. Further, state agencies, including DPS, may not require or suggest to a peace officer that the peace officer is required or expected to issue a predetermined or specified number of any type or combination of types of traffic citations within a specified period. *See id*. Indeed, any official who violates this law is subject to immediate removal from their position. *See* TEX. TRANSP. CODE § 720.002(e).

16. Notably, Sgt. Shugart had implemented a similar quota program at the Center duty station, in Shelby County. Sgt. Shugart was stationed in Center prior to transferring to Nacogdoches. Troopers in Shelby County also raised concerns with the quota system.

17. Corporal Mahan and Troopers Barton, Henley, and Riggins refused to participate the in the competitions. They simply continued to do what they swore an oath to do: protect and serve.

**B.     The Troopers reported Sgt. Shugart's illegal quota system and other violations of DPS policy to their superiors, who purportedly conducted an internal investigation that turned out to be a cover-up.**

18. In September 2018, Troopers Henley and Riggins met with Captain McDaniel. Troopers Henley and Riggins reported the quota system and prizes, as well as other ongoing personnel issues with Sgt. Shugart. Trooper Riggins then met with Major Terry Truett, the Division Commander for the Southeast Texas Region (Region 2).

19.     Following these meeting, Major Truett assigned Lieutenant Carl Currie, a subordinate in Truett's Houston Office, to investigate the ongoing issues at the Nacogdoches duty station.[1]  The process is known internally as a Division Referral.

20.     On or about October 15, 2018, Lt. Currie did meet with Trooper Barton and the others in the Lufkin office to discuss their concerns about Sgt. Shugart and the quota system as part of what they believed to be a serious investigation by their chain of command.  In reality, Lt. Currie's "investigation" was nothing more than a cover-up and white washing of Sgt. Shugart's unlawful conduct.

**C.      Sgt. Shugart retaliates against the Troopers for reporting him to the Regional Commander; the Regional Commander and other DPS officials do nothing.**

21.     On October 25, 2018, 10 days after the Troopers met with Lt. Currie, Sgt. Shugart called Trooper Barton into his office and instructed him to close the door.  Sgt. Shugart then told Trooper Barton that he "was fully aware of the investigation."  Sgt. Shugart also accused Barton of "going rogue."

22.     Later the same day, Sgt. Shugart exploded on Trooper Riggins in the Nacogdoches office. Shugart berated Riggins because a door was closed.  During his rage, Sgt. Shugart put his finger in Trooper Riggins' face and screamed and yelled at Trooper Riggins in front of his colleagues. Following these two incidents, Trooper Barton contacted Lt. Currie and informed Lt. Currie about what Sgt. Shugart had told him and about Sgt. Shugart exploding on Trooper Riggins.  Troopers Barton and Riggins also informed their Lieutenant about these incidents.

23.     After this point, Sgt. Shugart repeatedly retaliated against Corporal Mahan and Troopers Barton, Henley, and Riggins.  Sgt. Shugart also harassed and berated the Troopers.  Sgt. Shugart even stalked the Troopers by following them around in his unmarked DPS car.

---

[1] Major Truett offices in the Houston DPS office.

24.     In January 2019, while Lt. Currie was purportedly still investigating, Trooper Barton tried to apply for a promotion to a position on the DPS Hostage Negotiation Team.  Trooper Barton's application was time sensitive and needed Sgt. Shugart's approval.  Sgt. Shugart never responded to Trooper Barton, so Trooper Barton was unable to submit his application.  Thus, Trooper Barton was denied the promotion.

25.     Thereafter, Lt. Currie concluded his investigation.  In announcing the results of Lt. Currie's "investigation," Major Truett told the Troopers the issues were nothing more than "miscommunications."  Lt. Currie's report did not mention the illegals quotas, monetary awards, and retaliation.  In other words, Lt. Currie completely and, no doubt, purposefully omitted the most serious complaints from his report.

**D.      The Troopers filed an official compliant; the Office of the Inspector General launched an investigation; Sgt. Shugart, Captain McDaniel, and other within DPS retaliated against the Troopers.**

26.     Because of the continued harassment, and the fact that Lt. Currie and Major Truett did nothing, Corporal Mahan and Troopers Barton, Henley, and Riggins filed an official complaint letter with DPS, specifically with Kevin Meade, DPS's Chief Dispute Resolution Officer.  The official complaint was filed on February 8, 2019.

27.     On or about April 1, 2019, Lieutenant Ric Lopez ("OIG Lopez"), with the Office of the Inspector General, began a new investigation.  The Troopers provided documents, affidavits, statements, and other evidence to OIG Lopez as part of the investigation.

28.     On April 4, 2019, Corporal Mahan and Troopers Barton and Riggins observed Sgt. Shugart spying on them while they were on break.  Trooper Riggins then called Sgt. Shugart; Sgt. Shugart told Trooper Riggins that he was "watching them; we're all watching y'all."  The Troopers then contacted OIG Lopez about this incident.

29. Because of this incident and other acts of retaliation by Sgt. Shugart, OIG Lopez asked Jason Taylor, the Region Commander, to remove Sgt. Shugart as the Nacogdoches area sergeant until the investigation was completed. *See DPS General Manual* § 07.42.09 ("Department employees shall not retaliate against individuals who participate in the administrative complaint process as either a complainant or witness."). OIG Lopez's request was refused.

30. On April 18, 2019, Stephen Shires, the Shelby County District Attorney, sent an urgent letter to Assistant Attorney General Lance Kutnick, the Chief of the Criminal Prosecutions Division for the Texas Attorney General's Office concerning Sgt. Shugart.[2] Attorney Shires asked Assistant AG Kutnick to initiate a criminal investigation into Sgt. Shugart's quota system as well as possible abuse of official capacity, official oppression, and obstruction-retaliation by Sgt. Shugart.

31. Specifically, Attorney Shires stated:

> I have reviewed statements from a number of Troopers that raise concerning questions about the tactics that Sgt. Shugart employed here in Shelby County, and elsewhere in East Texas. From their statements, it appears that Sgt. Shugart was mandating that the Troopers under his command maintain a quota of stopping cars and/or making arrests in clear violation of TEX. TRANSP. CODE Ann. §720.002 (Lexis-Nexis 2019). It appears from their statements that he rewarded Troopers that "met their quota" with prizes.
>
> Further, I am concerned that there may be additional issues that arise regarding the Troopers that did not toe the line. The activities in question could possibly implicate Chapter 39 of the Texas Penal Code, specifically - Section 39.02 (Abuse of Official Capacity) and Section 39.03 (Official Oppression). Finally, the activities may also violate TEX. PENAL CODE Ann. §36.06 Lexis-Nexis 2019)- Obstruction-Retaliation.
>
> . . . . Also, very importantly, it is my understanding that an investigation is currently being conducted by OIG Lieutenant Ric Lopez. Lt. Lopez will certainly have much more information than I have, including recorded statements that contain additional detail. I have not spoken to Lt. Lopez, nor have I seen any work

---

[2] The Criminal Prosecutions Division is responsible for investigating abuses of office by state officials and employees.

7

product from him. However, as I said, it is my understanding that he has a great deal more information concerning this matter.

32. Shortly after Shires' letter, Captain McDaniel ordered to Corporal Mahan and Trooper Riggins to report to Beaumont for an immediate meeting with her. At the meeting, in May 2019, Captain McDaniel told Corporal Mahan and Trooper Riggins that they were being transferred effective immediately to Houston County. During Trooper Riggins' meeting with Captain McDaniel, she explicitly referenced the Division Referral and the OIG investigation as the reasons why Corporal Mahan and Trooper Riggins were being transferred.

33. Importantly, Corporal Mahan and Trooper Riggins both live in Nacogdoches County; thus, the transfer to Houston County and long travel-time placed a tremendous burden on Trooper Riggins and Corporal Mahan and their families. In fact, Trooper Riggins was involved in a serious traffic wreck while traveling between his home and Houston County due to fatigue.

34. Moreover, the transfer of Corporal Mahan and Trooper Riggins to Houston County left the Nacogdoches County Office critically understaffed, with only 7 troopers—there are supposed to be 11 DPS troopers in Nacogdoches. The understaffing situation was so serious that Nacogdoches County Sherriff Jason Bridges sent a letter directly to DPS Director Steven McCraw requesting an explanation because Nacogdoches County Sheriff's Deputies rely on troopers for backup and support under a multitude of circumstances. **In short, the retaliation of Sgt. Shugart, Captain McDaniel, and others in DPS was putting the lives and safety of Nacogdoches County residents at risk.**

35. Sgt. Shugart continued to retaliate against Troopers Barton and Henley—who were among the most senior troopers remaining in Nacogdoches—by making them work the least desirable shifts such as the late nights. Sgt. Shugart also constantly told Troopers Barton and Henley that "we are watching you, watching everything you do." Sgt. Shugart even admonished an office

secretary for helping Trooper Riggins with some paperwork on a case pending in the Nacogdoches County Court at Law. Sgt. Shugart ordered the secretary not to assist Trooper Riggins anymore.

**E.   Once the OIG investigation was completed, the Chief of the Highway Patrol Division found that the Trooper's complaints to be true and sustained them; yet the retaliation by Sgt. Shugart, Captain McDaniel, Major Truett, and other continued.**

36.   In September 2019, the Troopers were notified that OIG Lopez had completed his investigation and his report had been submitted to then Chief of the Highway Patrol Division, Ron Joy, for review.

37.   On October 3, 2019, during an area-wide meeting, the Troopers and other troopers were informed that the investigation of Sgt. Shugart was "over and he was not going anywhere." Those in attendance were then told that they were not authorized to contact the Office of the Inspector General anymore without approval from the chain of command. In other words, troopers were told that they were no longer able to report wrongdoing within DPS to the office who is responsible for investigating wrongdoing within DPS! *See DPS General Manual* § 7.42.03.1 ("individuals may submit complaints regarding employee misconduct directly to the Office of Inspector General").

38.   Unsurprisingly, the retaliation grew worse following this meeting. On December 10, 2019, Trooper Barton sent a memo to his supervisor and OIG Lopez asking for the retaliation to stop.

39.   Finally, on May 6, 2020, new Texas Highway Patrol Chief Dwight D. Mathis finally issued a memo to the Troopers with the respect to the OIG's investigation of Shugart—almost 9 months after the OIG's investigation had been completed. **The investigation found that the Troopers complaints about Shugart awarding improper gifts at Center and Nacogdoches were true**. The investigation also found that **"Between 2016 and 2019, Sergeant Shugart displayed a pattern of hostile, discourteous and unprofessional behavior towards subordinates assigned**

9

**to the [Nacogdoches] and [Center] duty stations."** Further, it was noted that **"Sergeant Shugart acted in a manner contrary to the Department's rules, regulations, and expectations of its employees."**

40. Despite these findings, Sgt. Shugart was only suspended for three days without pay. Shugart was also permitted to remain in the Nacogdoches office.

41. The next day—May 7, 2020—the Troopers received a Memo from Major Truett. During a meeting with their superiors, the Troopers were told that rather than removing Shugart, the Troopers would be permitted to seek transfers and that there their transfer requests would be granted. The Troopers were also told that if choose to stay in Nacogdoches County—where they and their families live—or transfer to a neighboring county, then they would be forced to participate in a one-on-one mediation with Shugart, the same man who tormented them for reporting his illegal activity. Further, as part of Major Truett's memo, the Troopers were given highlighted portions of the DPS General Manual, with portions highlighted in a deliberate effort to silence them about everything that had transpired.

42. Unfortunately, Major Truett's promise of transfer was short lived. In fact, it was so short lived that Trooper Barton's transfer request was denied the following week!

43. More concerning, DPS officials have begun to engage in further retaliation towards the Troopers, including initiating sham investigations into past events. This retaliation is designed to force the Troopers to retire or leave DPS, all because they dared to reporting illegal activity by their superiors.

## LEGAL CLAIMS

### COUNT ONE – VIOLATION OF FIRST AMENDMENT RIGHT TO FREE SPEECH

44. The Troopers, public employees, engaged in protected speech by filing their official complaint with the Office of the Inspector General. *See Connick v. Meyer*, 461, U.S. 138, 146 (1983) (citing *Givhan v. Western Line Consolidated School District*, 439 U.S. 410 (1979)) (noting that "First Amendment protection applies when a public employee arranges to communicate privately with his employer, rather than to express his views publicly.").

45. The speech was on a topic of public concern. Specifically, the speech concerned ongoing, unlawful activity within the DPS, a state agency.

46. Sgt. Shugart, Captain McDaniel, Major Truett, and others within DPS retaliated against the Troopers, as set forth above, for exercising their First Amendment right to free speech.

47. The retaliatory actions of Sgt. Shugart, Captain McDaniel, Major Truett, and others within DPS caused the Troopers injuries and damages that would chill a person of ordinary firmness.

48. The retaliatory actions of Sgt. Shugart, Captain McDaniel, Major Truett, and others within DPS were substantially motivated by the Troopers' reports to the OIG and the exercise of their First Amendment rights.

### COUNT TWO – VIOLATION OF FIRST AMENDMENT RIGHT TO PETITION

49. The right "to petition for a redress of grievances [is] among the most precious of the liberties safeguarded by the Bill of Rights." *United Mine Workers v. Illinois State Bar* Association, 389 U.S. 217 (1967).

50. In filing the complaint regarding Sgt. Shugart's unlawful quota system, the Troopers exercised their First Amendment right to petition.

51. Sgt. Shugart, Captain McDaniel, Major Truett, and others within DPS retaliated against the Troopers, as set forth above, for exercising their First Amendment right to petition. Further, the retaliatory actions of Sgt. Shugart, Captain McDaniel, Major Truett, and others within DPS caused the Troopers injuries that would chill a person of ordinary firmness.

52. The retaliatory actions of Sgt. Shugart, Captain McDaniel, Major Truett, and others within DPS were substantially motivated by the Troopers reports to the OIG and exercise of their First Amendment rights.

### COUNT THREE – VIOLATION OF THE TEXAS WHISTLEBLOWER ACT

53. The Troopers, veteran law enforcement officers with the DPS, are public employees.

54. The Troopers were employed by the Texas Department of Public Safety, a state agency, and a governmental unit.

55. Sgt. Shugart is also employed by DPS and acted in his official capacity in implementing the quota system and prize system.

56. The Troopers reported that Sgt. Shugart was violating state law and DPS policy by implementing a quota system for arrests and traffic stops and paying those with the most stops and arrests with monetary and other prizes. *See* TEX. TRANSP. CODE § 720.002. This was later confirmed by OIG Lopez's investigation.

57. The Troopers made their report in good faith to the appropriate law enforcement authority, the OIG and their superiors within the DPS.

58. The Trooper's reporting of Sgt. Shugart resulted in adverse personnel action being taken against them, as set forth above. In fact, the transfers of Corporal Mahan and Trooper Riggins are presumptively retaliatory. *See* TEX. GOV'T CODE § 554.004(a).

REQUEST FOR PERMANENT INJUNCTIVE RELIEF

59. The Troopers seek a permanent injunction from this Court prohibiting Sgt. Shugart, Captain McDaniel, Major Truett, and other within the DPS from retaliating and continuing to retaliate against them for their exercise of their First Amendment Rights in reporting Shugart's unlawful quota and awards systems.

REQUEST FOR DECLARATORY JUDGMENT

60. As recently noted by the Supreme Court of the United States, "public employees do not renounce their citizenship when they accept employment, and this Court has cautioned time and again that public employers may not condition employment on the relinquishment of constitutional rights." *Lane v. Franks*, 573 U.S. 228 (2014). "There is considerable value, moreover, in encouraging, rather than inhibiting, speech by public employees. For '[g]overnment employees are often in the best position to know what ails the agencies for which they work.'" *Id*. (citing *Waters v. Churchill*, 511 U. S. 661, 674 (1994) (plurality opinion)).

61. Therefore, The Troopers also seek a Declaratory Judgment from this Court finding that the provisions withing the DPS's *General Policy Manual*—in particular the provisions Major Truett highlighted in his memo to the Troopers, 06.30.02.6 and 06.30.02.13—are unconstitutional as applied, to the extent that it prohibits the Troopers and other DPS employees, who are all public employees, from exercising their First Amendment Rights to free speech and to petition.

DAMAGES

62. Plaintiffs seek to recover the following damages:

    a. Past economic damages in the form of lost promotions and vacation time;

    b. Future economic losses in the form of future lost earning and loss of earning capacity; and

  c. Damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life.

## ATTORNEY'S FEES

63. Plaintiffs seek to recover their reasonable and necessary attorney's fees to protect their constitutional rights. *See* 42 U.S.C. § 1988. Plaintiffs also seek to recover their reasonable and necessary attorney's fees in prosecuting their claims under the *Texas Whistleblower's Act*. *See* TEX. GOV'T CODE § 554.003(a)(4).

## INTEREST AND COURT COSTS

64. Plaintiffs seek to recover prejudgment and post-judgment interest at the highest lawful rate.

65. Plaintiffs seek to recover their court costs.

## JURY TRIAL DEMAND

66. Plaintiffs demand a jury trial.

## PRAYER

WHEREFORE, Plaintiffs respectfully pray for judgment against Defendant for the following:

  a. Economic damages;

  b. Non-Economic damages;

  c. Permanent injunction;

  d. Declaratory judgment;

  e. Attorneys' fees and costs;

  f. Prejudgment and post-judgment interest;

  g. Court costs; and

  h. Such other and further relief, at law or in equity, to which Plaintiffs may show themselves justly and lawfully entitled.

Respectfully submitted,

**FRANKLIN LAW FIRM, PLLC**

_____
**Tanner G.M. Franklin**
Texas Bar No. 24082506
tfranklin@tfranklinlawfirm.com
2528 Highway 103
Etoile, Texas 75944
(936) 596-0476 – Telephone
(888) 430-2559 – Fax

**JAMES &HIGHTOWER**
**ATTORNEYS AT LAW**

/s/ *Sean Hightower*_____
**Sean Hightower**
Texas Bar No. 24086497
seanhightower@yahoo.com
115 South St.
Nacogdoches, TX 75961-5539
(936) 560-3300 – Telephone
(936) 560-5600 – Fax