# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# LUFKIN DIVISION

| | |
|---|---|
| RODNEY MAHAN, JOHN H. § <br> HENLEY, III, JOEL BARTON, JR., § <br> JOHN RIGGINS, AND JUSTIN SIKES § <br>    *Plaintiffs* § <br> § <br> V. § <br> § <br> THE TEXAS DEPARTMENT OF § <br> PUBLIC SAFETY, STEVEN MCCRAW, § <br> AND STEVEN MACH § <br> *Defendants* § | CIVIL ACTION NO. 9:20-CV-00119 <br><br><br><br> JURY DEMANDED |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 35)

COME NOW, Plaintiffs, Rodney Mahan, John H. Henley, III, Joel Barton, Jr., John Riggins, and Justin Sikes (collectively "Plaintiffs" or "the Troopers") and file this Response in Opposition to Defendants the Texas Department of Public Safety ("DPS"), Steven McCraw, and Steven Mach's (collectively "Defendants") Motion for Summary Judgment (Doc. No. 35). The Troopers would respectfully show the Court as follows.

# **TABLE OF CONTENTS**

Table of Contents ............................................................................................................................1

Response to Statement of Issues to be Decided by the Court. ......................................................3

Response to Defendants' Statement of Facts .................................................................................3

Arguments and Authorities .............................................................................................................6

      I.      Summary Judgment Standard ......................................................................................6

      II.     The Law Applicable to Texas Whistleblower Act ("TWA") Claims ..........................7

      III.    Plaintiffs have fulfilled procedural requirements under the TWA because DPS's internal grievance procedures were already invoked and concluded in May 2020 when the Troopers were told the findings of the OIG investigations. .................................................................................................7

      IV.    Plaintiffs suffered adverse personnel actions following their reports of Sgt. Shugart's unlawful activities. .............................................................................10

            A.     Corporal Mahan .............................................................................................11

            B.     Trooper Barton ...............................................................................................12

            C.     Trooper Sikes .................................................................................................13

            D.     Trooper Henley ..............................................................................................13

            E.     Trooper Riggins .............................................................................................14

      V.     Troopers Riggins, Henley, and Sikes can maintain their claims for injunctive and declaratory relief against Defendants McCraw and Mach. .............................................................................................................................15

            A.     Corporal Mahan and Trooper Barton .............................................................15

            B.     Troopers Riggins, Henley ..............................................................................15

                  1.     Troopers Riggins, Henley, and Sikes suffered adverse action sufficient to show unlawful retaliation in violation of the First Amendment. ......................................................15

                  2.     Troopers Riggins, Henley, and Sikes engaged in protected speech. .......................................................................................16

3.  Troopers Riggins, Henley, and Sikes have asserted claims against Defendants McCraw and Mach for injunctive relief beyond just a request for declaratory judgment concerning the DPS policy and have suffered adverse employment actions. ............................................18

CONCLUSION ...................................................................................................................19

Certificate of Service..........................................................................................................20

### RESPONSE TO STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

1. Plaintiffs satisfied the procedural requirements of the Texas Whistleblower Act prior to filing suit.

2. Plaintiffs have legally sufficient evidence to support the challenged essential elements of their Texas Whistleblower Act claims.

3. Plaintiffs have legally sufficient evidence to support their First Amendment claims.

### RESPONSE TO DEFENDANTS' STATEMENT OF FACTS

Defendants' five stated facts are undisputed. *See* Doc. No. 35, pgs. 7 and 8. The Trooper's would submit that the following relevant facts are also undisputed.

The Troopers will reference exhibits submitted with their Response by their Appendix page number: "Appx. [pg.]."

On February 8, 2019, following an internal investigation known as a "Division Referral," Corporal Mahan and Troopers Henley, Riggins, and Barton submitted a formal request for an OIG investigation into the conduct of Sgt. Shugart. Appx. 001-003. This request was submitted to Kevin Meade, the Chief Dispute Resolution Officer for DPS. *Id*.

On March 7, 2019, DPS assigned OIG Lt. Riccardo Lopez ("OIG Lt. Lopez") to investigate the Troopers' formal complaints concerning Sgt. Shugart. Appx. 006; *see* Appx. 004-0039.

3

As part of his investigation, OIG Lt. Lopez interviewed Trooper Riggins on April 1, 2019; Trooper Barton on April 1, 2019; Corporal Mahan on April 2, 2019; Trooper Henley on April 2, 2019; and Trooper Sikes on April 8, 2019. Appx. 007, 008, 009, 013. The Troopers also contacted OIG Lt. Lopez regularly during his investigation. Appx. 097-098.

During OIG Lt. Lopez's investigation, Corporal Mahan and Trooper Riggins were transferred from the Nacogdoches duty station to the Crockett duty station. Appx. 040, 041. Initially, Corporal Mahan and Trooper Riggins were told that this was a temporary transfer due to "manpower issues." Appx. 048-049. Corporal Mahan and Trooper Riggins reported their transfer as an act of retaliation to OIG Lt. Lopez and an additional OIG investigation was initiated. Appx. 040; Appx. 118; Appx. 119; Appx. 121.

OIG Lt. Lopez then learned from DPS Major Terry Truett—the Regional Commander for the Highway Patrol—that the transfer had nothing to do with "manpower;" rather, the transfer was done based on the direct orders from Ron Joy, the then Chief of the DPS Highway Patrol Division, because of the ongoing investigation. *See* Appx. 048-049; Appx. 122-126.

On August 2, 2019, OIG Lt. Lopez completed his investigation as submitted his report to his direct superior, Captain Brian Lillie. Appx. 004; Appx. 089. As part of his investigation, Lt. Lopez sustained the Troopers' allegations that Sgt. Shugart gave improper gifts and awards to "top" troopers under his command and that Sgt. Shugart displayed a pattern of hostile, discourteous, and unprofessional behavior towards subordinates at the Center and Nacogdoches DPS duty stations. Appx. 038-039.

Interestingly, during his September 2020 deposition, OIG Lt. Lopez testified that aside from grammar, he did not recall Captain Lillie making changes to his report. Appx. 121. As part of his February 2021 corrections, however, OIG Lt. Lopez changed his prior deposition testimony to reveal

4

that he did discuss substantive components of his report with Captain Lillie and that he made substantive changes regarding Allegation I (concerning Sgt. Shugart instituting an illegal quota system). Appx. 134-135. In fact, OIG Lt. Lopez stated that he had originally recommended that Allegation I be "sustained." *Id*. OIG Lt. Lopez then stated that he had a conversation with Captain Lillie, and they agreed that Allegation I should be "not sustained." *Id*. OIG Lt. Lopez also acknowledged that "there was some back and forth between me and Captain Lillie regarding me wanting to include information in the evaluation of Allegation I. . . ." *Id*. OIG Lt. Lopez ultimately acknowledged that Captain Lillie helped him re-write his evaluation for Allegation I. *Id*.

On October 25, 2019, Sgt. Shugart sent an email to his supervisor, Lt. James Brazil, stating that he had a meeting with Chief Joy on October 31, 2019, to discuss the investigation. Appx. 050. This was months prior to any finding from OIG Lt. Lopez's investigation being announced.

On November 18, 2019, Major Justin Chrane—who reviewed OIG Lt. Lopez's report—submitted a memo to Chief Joy stating that he believed Lt. Lopez was biased against Sgt. Shugart.[1] Appx. 051. Major Chrane indicated that his initial recommendation was to demote and transfer Sgt. Shugart but then determined that Lt. Lopez had an "obvious bias." *Id*.; *see* Appx. 146-147 (discussing Major Chrane's recommendation for 3-day suspension).

On May 6, 2020, new Chief of the Highway Patrol Division, Dwight Mathis, met with the Troopers and gave them a memo outlining OIG Lopez's findings and that Sgt. Shugart would receive a three-day suspension without pay. Appx. 148-149; Appx. 052-053.; Appx. 44 (identifying Ron Joy as predecessor).

On May 26, 2020, Corporal Mahan and Troopers Henley, Riggins, and Barton filed suit. Doc. No. 1.

---

[1] Major Chrane is assistant chief for administration who works in the office of the Chief of the Highway Patrol Division. Appx. 141. Major Chrane worked under former Chief Joy and under current Chief Mathis.

On June 26, 2020, Trooper Sikes also filed suit.  Doc. No. 6.

## ARGUMENTS AND AUTHORITIES

**I.     Summary Judgment Standard**

A party moving for summary judgment has the initial burden of demonstrating that there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986; *see* FED. R. CIV. P. 56(a).  To avoid summary judgment, the non-movant must come forward with competent, summary-judgment evidence of the existence of a genuine dispute of material fact.  *See Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).  "A genuine dispute as to a material fact exists when, after considering the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, a court determines that the evidence is such that a reasonable jury could return a verdict for the party opposing the motion."  *Haverda v. Hays Cty.*, 723 F.3d 586, 591 (5th Cir. 2013).

In this summary judgment determination, the Court should view the facts in the light most favorable to Plaintiffs.  *See id*.  The Court must draw all reasonable inferences in favor of Plaintiffs and not weigh the evidence or make credibility determinations.  *Id.*

In all, summary judgment is a harsh remedy and is inappropriate if the evidence is such that a reasonable jury could return a verdict for the party opposing the motion. *See Haverda*, 723 F.3d at 591.  Thus, "summary judgment is appropriate only 'if the movant shows that there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law.'" *Id.* (quoting FED. R. CIV. P. 56(a)).

**II.    The Law Applicable to Texas Whistleblower Act ("TWA") Claims**

To state a claim under the TWA, a plaintiff must show that (1) he was a public employee; (2) he made a good-faith report that his employer or another public employee violated the law;

(3) he made the report to the appropriate law-enforcement authority; and (4) he was terminated, suspended, or suffered an adverse personnel action as a result of the report. TEX. GOV'T CODE § 544.002(a). In this case, Defendants only challenge that the Troopers lack evidence to show that they suffered an adverse personnel action—the fourth element. Elements (1), (2), and (3) are not in dispute.

Although not an element of the claim, the TWA imposes a procedural requirement that "[a] public employee must initiate action under the grievance or appeal procedures of the employing state or local governmental entity relating to suspension or termination of employment or adverse personnel action before suing under this chapter." TEX. GOV'T CODE § 544.002(a).

### III. Plaintiffs have fulfilled procedural requirements under the TWA because DPS's internal grievance procedures were already invoked and concluded in May 2020 when the Troopers were told the findings of the OIG investigations.

In their motion, Defendants first contend that Plaintiffs' TWA claims are barred because they failed to invoke internal DPS procedures concerning any adverse personnel actions taken against them. Doc. No. 35, pg. 5. According to Defendants, DPS has two formal procedures that an employee may use to address an adverse personnel action, a Chain-of-Command Review or mediation. *Id*.

Except for Trooper Riggins, the Troopers concede they did not request a of "Chain of Command Review" regarding the incidents with Sgt. Shugart. Nonetheless, in making their procedural-bar arguments, Defendants ignore that DPS unilaterally initiated a mediation process concerning the Troopers and Sgt. Shugart after Lt. Currie's "Chain of Command Review." Appx. 54; Appx. 58.

DPS's argument that the Troopers cannot maintain a TWA claim based on failure to invoke DPS's grievance procedures is misguided because the process was already invoked.

7

Indeed, emails from then-Chief Ron Joy further show that DPS "[had] a DRO process that desperately needs to be done." Appx. 055-057; *see* Appx. 059-060.

OIG Lt. Lopez appeared to view his investigation as a continuation of Lt. Currie's investigation. Appx. 061; Appx. 113-114, Appx. 062. OIG Lt. Lopez testified that he considered Corporal Mahan, Trooper Henley, Trooper Riggins, Trooper Barton, and Trooper Sikes to be "complainants," as well as several others. Appx. 115-116.

OIG Lt. Lopez testified that he believed that the Troopers were supposed to report ongoing acts of retaliation to him or OIG. Appx. 098; Appx. 093 ("The purpose of OIG is to investigate allegations of misconduct."). OIG Lt. Lopez also indicated that OIG is an appropriate place for DPS employees to report misconduct. Appx. 094; Appx. 095. Chief Mathis, the head of the Highway Patrol Division, also agreed that troopers can report wrongdoing to the chain of command *or* OIG. Appx. 142.

Additionally, former counsel for the Troopers was in active contact with DPS's Chief Dispute Resolution Officer about this matter and the mediation process. Appx. 001-003. Both Troopers Henley and Riggins personally spoke to DRO Meade concerning this matter. Appx. 180; Appx. 201-202. Letters from OIG Captain Brian Lillie to Corporal Mahan also confirmed that an "administrative investigation" was ongoing. Appx. 063, 064.

The situation and the need to "reinvoke" the mediation process was at best unclear because the evidence shows that everyone involved in this matter, including DPS, considered the DRO process already underway. *See Ward v. Lamar Univ.*, 484 S.W.3d 440, 448 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (quoting *Berry v. Bd. of Regents of Tex. S. Univ.*, 116 S.W.3d 323, 325 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ("To the extent the steps in such a [grievance or appeal] procedures are unclear, as in this case, an employee's request to ranking officials of the

employer to invoke the procedure (*i.e.*, whatever it may be) can hardly be denied effect."); *Fort Bend Indep. Sch. Dist. v. Rivera*, 93 S.W.3d 315, 320-21 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (noting that an entity's unclear policy does not serve as a bar to an employee's TWA claim). Simply put, there was no need for the Troopers to file a request for a "Chain of Command Review" or mediation because DPS already invoked mediation and its internal grievance procedures, including the OIG investigative process.

Moreover, "[t]he goal of section 554.006 is 'to afford the governmental entity with the opportunity to investigate and correct its errors and to resolve disputes before incurring the expense of litigation.'" *Fort Bend Indep. Sch. Dist. v. Gayle*, 371 S.W.3d 391, 395 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). Here, the Troopers gave DPS the opportunity to investigate and correct its errors. In fact, DPS investigated for over a year. Once the investigation concluded and DPS failed to take appropriate action, the Troopers filed suit.

With respect to Trooper Riggins, he did file a DRO-01. Doc. No. 35, pg. 6. That initiated a "Division Referral" by Lt. Carl Currie. Doc. No. 35, pg. 7. That investigation concluded in December 2018. As a result, the entire matter was referred to mediation with Chief DRO Meade and mediations were scheduled for early 2019. Appx. 058. Thus, the DRO process concerning Trooper Riggins had not concluded in December 2019. If it did conclude in December 2019, then it was restarted almost immediately with the mediations being scheduled by DRO Meade. *See* Appx. 058.

Accordingly, this matter was within the DPS's dispute process until May 6, 2020, when the Troopers were informed that the OIG investigation was complete. Corporal Mahan and Troopers Henley, Barton, and Riggins then filed suit within 30 days. Doc. No. 1. Their suit is timely.

9

Trooper Sikes filed suit on June 26, 2020, after he learned the investigation concluded based on the lawsuit. Doc. No. 6. Further, the statute of limitations for Texas state law claims was tolled due to COVID-19 from March 13, 2020. *See Eighteenth Emergency Order Regarding the Covid-19 State of Disaster*, Mis Docket No. 20-9080 (Tex. June 29, 2020); *see also First Emergency Order Regarding the COVID-19 State of Disaster*, 596 S.W.3d 265 (Tex. 2020) (issued March 13, 2020). Thus, Trooper Sikes' suit was also timely.

### IV. **Plaintiffs suffered adverse personnel actions following their reports of Sgt. Shugart's unlawful activities.**

As previously noted, with respect to substantive elements of Plaintiff's TWA claims, Defendants only challenge that the Troopers lack evidence to show that they suffered an adverse personnel action.

The TWA does not provide a specific definition of what constitutes an "adverse personnel action." *See Montgomery County v. Park*, 246 S.W.3d 610, 613 (Tex. 2007). Accordingly, the Supreme Court of Texas adopted the United States Supreme Court's standard for determining whether an employer's conduct constitutes an "adverse employment action" under the anti-retaliation provisions of Title VII, with some modifications. *Id*. at 614-15; *see Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).[2] An adverse personnel action under the TWA occurs "if [the action] would be likely to dissuade a reasonable, similarly situated worker from making a report under the Act." *Id*. at 614. In other words, adverse personnel action under the TWA includes more than just "ultimate employment decisions," and may include disciplinary reprimands, warnings—*i.e.*, a step toward a disciplinary action, missed pay increases, and transfers to less desirable places of work. *Tex. Dep't of Mental Health & Mental Retardation v. Rodriguez*, 63 S.W.3d 475, 481 (Tex. App.—San Antonio 2001, pet. denied)

---

[2] This is sometimes called the "objective materiality standard."

Some non-exclusive factors that courts *may* consider in determining whether an employer's conduct constitutes an "adverse employment action," include: (1) the extent to which the action negatively affected the employee's job prestige; (2) the extent to which the action negatively impacted the employee's opportunity for advancement; (3) change in working conditions; (4) changes in pay or income; and (5) the ability to obtain outside employment. *Ward*, 484 S.W.3d at 448-49.

With one notable exception concerning Trooper Riggins that will be addressed below, Defendants are correct that none of the Troopers were demoted, had their pay cut, or received formal disciplinary actions. Doc. No. 35, pg. 9. In their motion, however, Defendants also concede that several employment actions are alleged to have occurred by the Troopers. Like the state defendant in *Rodriguez*, however, Defendants contend that these actions are not "adverse personnel actions" under the TWA based on a narrow interpretation of the term "personnel action." *See Rodriguez*, 63 S.W.3d at 481 ("We disagree with MHMR's narrow reading of the term 'personnel action.'").

**A.    Corporal Mahan**

It is undisputed that Corporal Mahan was transferred from his duty station in Nacogdoches to Crockett. Appx. 157-158. Crockett is 55-60 miles from Nacogdoches.[3] *See* Appx. 158.

Further, Corporal Mahan, a senior officer with DPS, was assigned to less desirable shifts by Sgt. Shugart following his reports concerning Sgt. Shugart's conduct to OIG Lt. Lopez. Appx. 161-162. For example, in September 2020 Sgt. Shugart assigned Corporal Mahan to work 7 straight days from 7:00 am to 5:00pm and designated him as the "On-Call Trooper" at the same time. Appx. 065. This essentially made Corporal Mahan, the most-senior trooper in

---

[3] This is an undisputed fact of which the Court can take judicial notice. *See* FED. R. EVID. 201.

Nacogdoches, on duty 24 hours a day for 7 straight days. *Id*.; Appx. 162. Not only was this type of assignment out of the ordinary, especially for a senior trooper, it was also extremely dangerous because Corporal Mahan was going to be on 24-hour a day duty from Friday, September 18, 2020, through Friday, September 25, 2020. *See id*.

Corporal Mahan resigned as Corporal due to Sgt. Shugart's constant criticism of his work. Appx. 164-165; Appx. 066. Ultimately, Corporal Mahan then left DPS due to Sgt. Shugart's conduct. Appx. 164-165; Appx. 067.

**B.  Trooper Barton**

Trooper Barton was denied an opportunity to attend training course that could have aided in his advance. Appx. 174. Trooper Barton was also assigned to work the least desirable shifts. Appx. 169.

After speaking with OIG Lt. Lopez and the investigation concluded, Trooper Barton was informed that he was being investigated by the OIG for an incident that occurred in November 2019 and had previously been resolved. Appx. 174. Sgt. Shugart also demanded that Trooper Barton submit a memo to Captain McDaniel on this issue—an initial step towards formal disciplinary action. Appx. 172-173; Appx. 068-069. Sgt. Shugart also showed up at Trooper Barton's home uninvited. Appx. 170.

Trooper Barton was also denied a request to transfer to CVE, despite prior assurances that his request would be approved. Appx. 176-178; Appx. 070-071.

Ultimately, Trooper Barton tried to continue his duties as a DPS trooper in Nacogdoches but resigned after his request to transfer was denied, Sgt. Shugart continued to harass him, and DPS made him the subject of clearly retaliatory OIG investigation concerning an incident that

was already resolved and had occurred almost a year prior to him being notified of the investigation. Appx 174-175.

**C.    Trooper Sikes**

After meeting with OIG Lt. Lopez, Trooper Sikes was stalked by his supervisors at his home. Appx. 192-194. DPS officials also went to the homes of his family members, which concerned Trooper Sikes' family. Appx. 193.

Trooper Sikes was also denied the ability to transfer to Broaddus school by DPS Captain Michelle McDaniel. Appx. 192-195. Note, this transfer would have allowed Trooper Sikes to stay every night with his family in Lufkin, instead of having to spend work nights in San Augustine. Appx. 192-193 ("So I sent in a request to be at that office so it would put me within mileage.").

Captain McDaniel denied Trooper Sikes' request despite the Broaddus ISD superintendent requesting a DPS trooper be assigned to the school and the prior approval of Sgt. Wood (Troopers Sikes' immediate supervisor), Lt. Brazil, Captain McDaniel herself, and Major Truett. Appx. 194-195; Appx. 075; Appx. 076; Appx. 072-074. In fact, Sgt. Wood, Trooper Sikes' immediate supervisor, told Trooper Sikes that Captain McDaniel was going to deny his transfer and wanted Sgt. Wood to investigate Trooper Sikes. Appx. 196-197.

**D.    Trooper Henley**

Trooper Henley was denied earned time-off by Sgt. Shugart and subjected to repeated harassment. Appx. 181-182; Appx. 183. Trooper Henley's evaluations also went down. Appx. 184.

Sgt. Shugart also denied Trooper Henley's vacation requests and intentionally disrupted Trooper Henley's earned time-off. Appx. 181-182. OIG Lt. Lopez confirmed that Sgt. Shugart

intentionally disrupted Trooper Henley's earned time-off and was "vindictive" towards Trooper Henley. Appx. 117; Appx. 110, FN 3 ("There appears to be validity to Trp. Henley's allegation Sgt. Shugart intentionally disrupted his vacations requests in an effort to be vindictive . . . . Sgt. Shugart corroborated during his interview he made Trp. Henley return from vacation early in order to maintain coverage in Nacogdoches County.").

### E. Trooper Riggins

Trooper Riggins, like Corporal Mahan, was transferred to Houston County for almost a year solely because of his complaints and speaking with OIG Lt. Lopez. Appx. 199-200; Appx. 040. Once again, while Trooper Riggins was told this was a temporary transfer due to "manpower," the undisputed evidence establishes that Trooper Riggins was transferred because of the OIG investigation and the involvement of the Office of the Texas Attorney General in investigating Sgt. Shugart. Appx. 199; Appx. 205; Appx. 048-049.

Notably, just days after his deposition, Trooper Riggins was notified that he was being investigated for obtaining a statement from Erika Rice concerning Sgt. Shugart's conduct that was given to OIG Lt. Lopez. On April 27, 2021, Trooper Riggins was then formally disciplined and given a one-day suspension without pay. Appx. 083-084. This was the first C-1 Trooper Riggins ever received. *See* Appx. 13-14 (stating on the date of deposition he never had received a C-1).

Trooper Riggins also received a copy of an OIG Investigation dated June 2, 2020, that concerned tuning forks. Appx. 080-082. Trooper Riggins was the required to attend a disciplinary meeting with Captain McDaniel. *Id*.

While some these personnel actions are admittedly not "ultimate employment decisions," they are adverse personnel actions that "would be likely to dissuade a reasonable, similarly situated worker from making a report under the Act." *See, e.g.*, *Montgomery County*, 246 S.W.3d

14

at 614; *Rodriguez*, 63 S.W.3d at 481. Accordingly, the Troopers have produced legally sufficient evidence that they suffered at least one "adverse personnel action" under the TWA, which sufficient to raise a genuine dispute of material fact.

V. **Troopers Riggins, Henley, and Sikes can maintain their claims for injunctive and declaratory relief against Defendants McCraw and Mach.**

A. **Corporal Mahan and Trooper Barton**

Corporal Mahan tried to continue his duties as a DPS Trooper but resigned after it became clear that Sgt. Shugart and other DPS leadership intended to make no changes and were going to continue to retaliate against him and the others. Appx 166.

Similarly, Trooper Barton tried to continue his duties as a DPS trooper but resigned after his request to transfer was denied, Sgt. Shugart continued to subject him to abuse and hostility, and DPS made him subject of clearly retaliatory OIG investigation concerning an incident that was already resolved and had occurred almost a year prior to him being notified of the investigation. Appx. 174-175; Appx. 176-178.

Corporal Mahan and Trooper Barton are no longer employed by DPS. Because Corporal Mahan and Trooper Barton are no longer employed by DPS, their claims for prospective injunctive relief appear to be moot.

B. **Troopers Riggins, Henley, and Sikes**

1. **Troopers Riggins, Henley, and Sikes suffered adverse action sufficient to show unlawful retaliation in violation of the First Amendment.**

As stated above, Troopers Riggins, Henley, and Sikes can show that they suffered adverse employment actions. *See* Section IV, *supra*. Notably, the Supreme Court recently considered a case concerning a student's suspension from a junior varsity cheerleading team in the context of First Amendment retaliation. *See Mahanoy Area Sch. Dist. v. B. L. by & through Levy*, 20-255,

15

2021 WL 2557069, at *3 (U.S. June 23, 2021).  If a suspension from a junior varsity cheerleading team is a sufficiently adverse action to support a First Amendment claim, then surely being transferred over 60 miles away from one's home for a year, being denied a vacation and scheduled to work the least desirable shifts, being stalked by supervisors at one's home, and being denied transfer opportunities—among other acts of retaliation—are sufficiently adverse actions.

### 2. Troopers Riggins, Henley, and Sikes engaged in protected speech.

Defendants McCraw and Mach argue, based principally on *Garcetti v. Ceballos*, 547 U.S. 410 (2006), that the Troopers speech is not protected because it was made pursuant to their official duties.[4]  Doc. No. 35, pg. 13-15.  The issue, however, is not as clear cut as Defendants present it.  Indeed, Troopers Riggins', Henley's, and Sikes' speech was made on a topic of public concern and their speech was protected.  *See Markos v. City of Atlanta, Tex.*, 364 F.3d 567, 574 (5th Cir. 2004) (finding that "a public employee speaking out about alleged corruption in the police department" is "a subject undoubtedly of public concern"); *Branton v. City of Dallas*, 272 F.3d 730, 740 (5th Cir. 2001) ("Exposure of official misconduct, especially within the police department, is generally of great consequence to the public.").

In the *Lane v. Franks*, the Supreme Court attempted to clarify and provide further guidance on *Garcetti*.  *See Lane v. Franks*, 573 U.S. 228, 240, (2014).  The Court stated "the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech.  The critical question under *Garcetti* is whether the speech at issue itself is ordinarily within the scope of an employee's duties,

---

[4] Defendants appear to be advocating for a general rule that a law enforcement officer's report of unlawful conduct to investigators and his superiors cannot ever be a topic of public concern because reporting unlawful activity is a responsibility of a law enforcement officer.  Doc. No. 35, pg. 14.  If that is or becomes law, then reports by law enforcement concerning unlawful activity by their superiors are never subject to First Amendment protection.

16

not whether it merely concerns those duties." *Id.*; *see Anderson v. Valdez*, 845 F.3d 580, 593-99 (5th Cir. 2016) (extensively discussing *Garcetti* and speech made "pursuant to official duties").

While some of the Trooper's speech was made internally, it still was on a topic of public concern: Sgt. Shugart's unlawful activities that were affecting the constitutional rights of the citizens of Nacogdoches and Shelby Counties. *Id.*; *see Connick v. Meyer*, 461 U.S. 138, 146 (1983) (citing *Givhan v. Western Line Consolidated School District*, 439 U.S. 410 (1979)) (noting that "First Amendment protection applies when a public employee arranges to communicate privately with his employer, rather than to express his views publicly.").

As noted by the Fifth Circuit, "*Garcetti* expressly applies 'only to the expressions an employee makes pursuant to his or her official responsibilities [read: duties], not to statements or complaints (such as those at issue in cases like *Pickering* and *Connick*) that are made outside the duties of employment [read: pursuant to his or her duties as a citizen].' Such speech is never made pursuant to an employee's official duties. In such instances, *Garcetti* is inapplicable." *Anderson*, 845 F.3d at 597.

In this case, it is undisputed that the Troopers Riggins, Henley, and Sikes met with OIG Lt. Lopez—who was outside their ordinary chain of command—and reported official misconduct by Sgt. Shugart. *See* Appx. 142 (troopers can report wrongdoing to chain of command or OIG). While DPS troopers might regularly report and investigate violations of the law by the public, they do not regularly report unlawful conduct by their superiors. *See Anderson*, 845 F.3d at 602 ("Even though in some cases employees might have a general employment duty to speak, that duty is not part of their 'ordinary' official duties, so their speech pursuant to <u>that general duty is protected by the First Amendment</u>.") (emphasis added). Further, unlike traditional employee

reports to superiors, reports to OIG and OIG investigations can trigger criminal investigations. Appx. 107.

In any event, the Troopers also reported Sgt. Shugart's activity to Shelby County District Attorney Stephen Shires. Appx. 085-086. DA Shires then sent a letter to the Lance Kutnick with the Office of the Texas Attorney General requesting a formal investigation. *Id*. Following, the DA Shires' letter, the Office of the Attorney General then began an investigation into Sgt. Shugart. Appx. 048 ("Upon hearing that one of the trooper's attorneys forwarded their complaint to the Shelby County District Attorney which then transpired into the Texas Office of the Attorney General (OAG) becoming involved, Maj. Truett contacted Chief Joy to inform him OAG was now involved.") (emphasis added); Appx. 087-089. After Chief Joy was notified of the involvement of DA Shires and the OAG, Chief Joy ordered Major Truett to transfer Corporal Mahan and Trooper Riggins. Appx. 048 ("Chief Joy's response to Maj. Truett was 'we need to separate them.'"); Appx. 200.

Thus, in addition to reporting Sgt. Shugart's conduct to OIG Lt. Lopez, they also reported outside of their agency. Accordingly, that speech was not made pursuant to official duties. *See Anderson*, 845 F.3d at 602 ("Reading *Howell* in the framework of *Cutler* properly synthesizes *Lane's* effect on *Garcetti*. Namely, *Garcetti* and our court's pre-*Lane* jurisprudence established that when employees speak outside of their chain of command and outside of their job duties they are entitled to First Amendment protection.").

> **3. Troopers Riggins, Henley, and Sikes have asserted claims against Defendants McCraw and Mach for injunctive relief beyond just a request for declaratory judgment concerning the DPS policy and have suffered adverse employment actions.**

Finally, Defendants McCraw and Mach argue that they are entitled to summary judgment because the Troopers cannot show that official DPS policy caused a violation of their

18

constitutional rights. Doc. No. 35, pg. 20. First, this argument is an overly simplified reading of Plaintiffs' Second Amended Complaint. *See* Doc. No. 29. While the Troopers complain about the DPS policy and seek a declaratory judgment concerning DPS policy, Plaintiffs' Second Amended Complaint also states claim for injunctive relief against Defendants McCraw and Mach beyond just the official DPS policy. Doc. No. 29, ¶¶ 79-92. In fact, the complaint asserts ongoing acts of retaliation in the form of OIG investigations. Doc. No. 29, ¶¶ 82 and 92.

Second, while couched in terms of "causation," Defendants McCraw and Mach's argument appears to simply be reassertion of the same argument made by DPS that the Troopers cannot show an adverse employment action. Troopers Riggins, Henley, and Sikes respond that they did suffer adverse employment actions and continue to suffer adverse employment actions, even after filing this lawsuit. *See* Section IV, *supra*. Thus, Defendant McCraw and Mach are not entitled to summary judgment.

## CONCLUSION

In conclusion, the Troopers can show that procedural prerequisites to filing their Texas Whistleblower Act claims have been satisfied and there is legally sufficient evidence to raise a genuine dispute of material fact that each of the Troopers suffered adverse personnel actions for reporting unlawful conduct by Sgt. Shugart. Further, the Troopers Riggins, Henley, and Sikes have provided legally sufficient evidence to entitle them to injunctive relief against Defendants McCraw and Mach for continued violations of their First Amendment rights. Accordingly, Defendants' Motion for Summary Judgement should be denied.

Respectfully submitted,

**FRANKLIN LAW FIRM, PLLC**

*/s/ Janna Franklin*

        **Tanner G.M. Franklin**
        Texas Bar No. 24082506
        tfranklin@tfranklinlawfirm.com
        2528 Highway 103
        Etoile, Texas 75944
        (936) 854-3213 – Telephone
        (888) 430-2559 – Fax

        **JAMES & HIGHTOWER**
        **ATTORNEYS AT LAW**

        /s/ *Sean Hightower*
        **Sean Hightower**
        Texas Bar No. 24086497
        seanhightower@yahoo.com
        115 South St.
        Nacogdoches, TX 75961-5539
        (936) 560-3300 – Telephone
        (936) 560-5600 – Fax

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the above and foregoing instrument has been filed electronically in accordance with the rules of this Court on this the 29th day of June 2021 and served on the Counsel of Record listed below.

SETH BYRON DENNIS
Assistant Attorney General
Texas State Bar No. 00790580
seth.dennis@oag.texas.gov

PENNY MALEY
Assistant Attorney General
Texas State Bar No. 24105159
penny.maley@oag.texas.gov

Law Enforcement Defense Division
Office of the Attorney General
P. O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-2080 / Fax No. (512) 370-9814

        *[signature: Tanner Franklin]*
        **Tanner G.M. Franklin**