IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| RODNEY MAHAN, *et al..* | § | |
| *Plaintiffs* | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 9:20-CV-00119 |
| | § | |
| THE TEXAS DEPARTMENT OF | § | |
| PUBLIC SAFETY, *et al..*, | § | |
| *Defendants* | § | JURY DEMANDED |

**PLAINTIFFS' MOTION FOR REASONABLE ATTORNEY'S FEES AND COSTS**

Come now, Plaintiffs Rodney Mahan, Joel Barton, Jr., and John Riggins. Pursuant to the *Texas Whistleblower Act* (the "TWA") (Tex. Gov't Code § 554.003(a)(4)) and the Final Judgment (Doc. No. 59) in favor of Plaintiffs, prevailing Plaintiffs move for an award of reasonable attorney's fees, court costs, and expenses incurred in the successful pursuit of their claims against the Texas Department of Public Safety ("DPS") for unlawful retaliation in violation of the TWA.

## I. Procedural Background

On June 28, 2022, following the presentation of the evidence, a jury returned a verdict finding that the DPS unlawfully retaliated against each Plaintiff. Doc. No. 81. The jury awarded each Plaintiff the sum of $500,000.00. *Id*. On July 20, 2022, the Court issued its Final Judgment. Doc. No. 93. The Court awarded each Plaintiff $250,000.00—the maximum recoverable amount for damages under the TWA—and costs. *Id.*; *see* Tex. Gov't. Code § 554.003.

Accordingly, Plaintiffs Mahan, Barton, and Riggins are prevailing parties under the TWA and are entitled to recover costs and attorney's fees. *See* Tex. Gov't. Code § 554.003(a)(3),(4).

## II. ARGUMENTS AND AUTHORITIES

In this case, the Parties stipulated to submitting attorney's fees to the Court pursuant to Rule 54 of the *Federal Rules of Civil Procedure*. Doc. No. 57; *see* Fed. R. Civ. P. 54(d)(2).

A. **Attorney's Fees**

A prevailing party under the TWA is entitled to recover "reasonable attorney's fees." Tex. Gov't. Code § 554.003(a)(4); *Bates v. Randall Cnty.*, 297 S.W.3d 828, 838 (Tex. App.—Amarillo 2009, pet. denied); *City of Houston v. Levingston*, 221 S.W.3d 204, 237 (Tex. App.—Houston [1st Dist.] 2006, no pet.).[1]

"[O]ne of the purposes of the *Texas Whistleblower Act* is to secure lawful conduct by those who direct and conduct the affairs of government. To that end, the purposes of the Act are advanced if the wrongdoing governmental entity must pay a successful whistleblower plaintiff's reasonable attorney's fee." *Bates*, 297 S.W.3d at 838. As noted by the Amarillo Court of Appeals, the failure to fully award attorney's fees to a successful whistleblower plaintiff in and of itself creates a chilling effect on future whistleblowers' willingness to bring suit, which, in turn, would frustrate the purposes of the TWA. *Id.*

Texas courts, like federal courts, use the lodestar method to determine reasonable attorney's fees. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 501 (Tex. 2019); *see Hoenninger v. Leasing Enterprises, Ltd.*, No. 21-50301, 2022 WL 340593, at *3 (5th Cir. Feb. 4, 2022) ("The lodestar is intended to reflect a reasonable attorney's fee award[.]").

To calculate the lodestar, an attorney should multiply the number of hours worked by the hourly rate. *Levingston*, 221 S.W.3d at 237; *accord Rohrmoos Venture*, 578 S.W.3d at 498; *see Hoenninger, Ltd.*, 2022 WL 340593, at *3. This number yields what is commonly referred to as the "lodestar number." *See Rohrmoos Venture*, 578 S.W.3d at 498. Both the hourly rate and the number of hours worked must be reasonable. *See id.*

---

[1] Incidentally, the statutory damage caps under the *Texas Whistleblower Act* are expressly limited to "compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." Tex. Gov't. Code § 554.003(c). Thus, attorney's fees and court costs are not subject to or effected by the statutory damage caps.

2

"This base lodestar figure should approximate the reasonable value of legal services provided in prosecuting or defending the prevailing party's claim through the litigation process." *Rohrmoos Venture*, 578 S.W.3d at 498.  In other words, "[t]his readily administrable and objectively reasonable calculation is the standard for calculating the reasonableness and necessity of attorney's fees in a fee-shifting situation." *Id*.

Evidence that a trial court should be provided and should consider in setting the lodestar includes (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services.  *Id.*

Critically, the lodestar number—supported by sufficient evidence—creates a strong presumption that reflects the reasonable and necessary attorney's fees.  *Id.* at 499.

After the lodestar number is calculated, a trial court <u>may</u> adjust the lodestar amount upwards or downwards based on the *Johnson* factors,[2] which are also known as the in Rule 1.04(b) factors.  *Levingston*, 221 S.W.3d at 237; *see Rohrmoos Venture*, 578 S.W.3d at 501-02.

The *Johnson*/Rule 1.04(b) factors include:  (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required; (4) the effect on other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the attorneys' relationship with the client; and (12) awards in similar cases.  If some of these factors are accounted for in the lodestar amount, they should not be considered when adjusting.  *Levingston*, 221 S.W.3d at 237.

---

[2] *See generally*, *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated by Blanchard v. Bergeron*, 489 U.S. 87 (1989).

### A. The Hours Reasonably Expended

Plaintiffs' counsels' time records are attached as Exhibits to this motion. Exhibit 1B represents Mr. Franklin's time records are based on contemporaneous billing records; Exhibit 2B represents Mr. Hightower's time records; and Exhibit 3B represents Mr. Newman's contemporaneous time records. All time entries are in chronological order by date.

#### 1. Billing Judgment

In his affidavit, Mr. Franklin, Plaintiffs' lead counsel explains how he eliminated 2.5% of the total hours billed by Mr. Franklin and Mr. Hightower to reflect billing judgment. Exhibit 1. "Billing Judgment" means that the attorney time claimed is reduced to account for non-compensable time, such as non-productive time, overlap, etc.

In addition to the 2.5% overall reduction, Mr. Franklin also engaged in contemporaneous billing judgment with respect to his time entries. Exhibit 1. For example, on January 20, 2022, Mr. Franklin drafted an agreed motion to continue the trial setting and a proposed order and sent it to opposing counsel. Exhibit 1B. The task took one hour—as reflected in the parenthetical next to the description—but Mr. Franklin only billing for 7/10ths of an hour, which reflects a 30% cut based on billing judgment. Exhibit 1B.

Mr. Franklin also reduced Mr. Newman's hours billed by 5% to reflect billing judgment and any non-compensable time related solely to getting familiar with the case. Exhibit 1.

#### 2. Non-Prevailing Claims and Plaintiffs

Generally, a party seeking attorney's fees must segregate those fees incurred in connection with a claim that allows their recovery from fees incurred in connection with claims for which no such recovery is allowed. *See, e.g.*, *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311

(Tex. 2006); *Alief Indep. Sch. Dist. v. Perry*, 440 S.W.3d 228, 245 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). Courts have, however, recognized an exception to this general rule. *Id*.

The exception exists when discrete legal services advance both recoverable and unrecoverable claims, attorneys are not required to segregate fees to recover the total amount covering all claims. *Chapa*, 212 S.W.3d at 313–14; *Perry*, 440 S.W.3d at 245-46. Rather, the claims are said to be "intertwined," and the fact that attorneys' fees are incurred in advancing both recoverable and unrecoverable claims does not render those fees unrecoverable. *Id.*

Attorneys are not required to keep separate records documenting the exact amount of time working on one recoverable claim versus an unrecoverable claim. *Perry*, 440 S.W.3d at 246. Rather, segregation is sufficiently established if, for example, an attorney testifies that a given percentage of the drafting time would have been necessary even if the claim for which attorney's fees are unrecoverable had not been asserted. *Id*.

Originally, Plaintiffs also asserted First Amendment claims with their claims under the TWA. Doc. Nos. 1, 29. Those claims were dismissed at summary judgment. Doc. No. 46.

Further, the claims of John Henley, III and Justin Sikes were also dismissed at summary judgment. Doc. No. 46. Henley and Sikes were not prevailing parties and Mahan, Barton, and Riggins were not successful on their First Amendment claims. Thus, attorney's fees are only recoverable for the successful prosecution of Mahan's, Barton's, and Riggins' TWA claims.

### a. The First Amendment/*Ex Parte Young* Claims

With respect to the TWA claims and the First Amendment claims, the claims were largely intertwined. Both claims had substantially the same elements and the evidence was the same for both types of claims. Indeed, virtually all the work performed solely as to the First Amendment

claims was in the form of initial research, preparing the complaints, and responding to Defendants' motions to dismiss (Doc. Nos. 5 and 10) and motion for summary judgment (Doc. No. 35).

Mr. Franklin handled all the briefing in this case. Exhibit 1. Specifically, Mr. Franklin drafted, edited, and filed the responses to the motions to dismiss and the response for the motion for summary judgment. *Id*. Mr. Franklin makes the following adjustments considering the non-successful nature of the First Amendment claims:

- Mr. Franklin spent 12 hours preparing, drafting, and editing Plaintiffs' Original Complaint. Mr. Franklin reduced that time by 2 hours to reflect the time spent solely on the First Amendment issues.

- Mr. Franklin spent approximately 6 hours preparing, drafting, and editing Plaintiffs' First Amended Complaint. Mr. Franklin reduced that time by 4 hours to reflect time spent on the First Amendment issues and Plaintiff's Sikes unsuccessful claim.

- Mr. Franklin spent approximately 1.5 hours working on the Rule 26 Report and conducting the Rule 26 Attorney Conference. Mr. Franklin reduced that time by .5 hours to reflect time spent related solely to the First Amendment issues.

- Mr. Franklin spent approximately 5.5 hours responding to Defendants' Motion to Dismiss. Mr. Franklin reduced that time by 2.5 hours to reflect the 1.5 hours segregated to the First Amendment issues and an additional 1 hour for time spent on overlapping issues.

- Mr. Franklin spent approximately 17.5 hours responding to Defendant's Motion for Summary Judgment. Most of the Summary Judgment Response was focused on the *Texas Whistleblower Act* claims but did include some time spent on the unsuccessful First Amendment claims. Mr. Franklin reduced that time by 5.25 hours (30%) to reflect time spent on First Amendment issues and Plaintiffs Henley and Sikes' unsuccessful claims.

*See* Exhibit 1.

Accordingly, Mr. Franklin has reduced his time expended by 14.25 hours to reflect work solely related to the unsuccessful First Amendment clams. *See* Exhibit 1.

Mr. Hightower's involvement in this case was largely centered on client management; work with Plaintiffs prior to the initiation of the formal, federal proceedings; trial preparation; and trial. Exhibits 1, 2. Thus, Mr. Hightower's bills reflect minimal work specifically related to First

6

Amendment issues. In an abundance of caution, Mr. Hightower will reduce his hours billed by 5 hours.

Mr. Newman did not join the case until *after* the Court issued its summary judgment on December 29, 2021.[3] Exhibits 1, 3. Accordingly, all of Mr. Newman's work was on the successful claims and his hours expended have not been reduced for any work on any non-successful claim.

b. Plaintiffs Henley's and Sikes' Claims

With respect to the unsuccessful claims of Plaintiff Henley and Sikes, Mr. Franklin eliminated all hours expended solely in conference, communications, etc. with either Plaintiff Henley or Sikes. Exhibit 1. That amounted to approximately 3.5 hours in work. Exhibit 1. As discussed above, Mr. Franklin also reduced his time by 9.5 hours: 4 hours for work done on Plaintiffs' First Amended Complaint (primarily focused on adding Plaintiff Sikes) and 5.5 hours (30%) of the time spent responding the motion for summary judgment. Exhibit 1. Mr. Franklin also reduced his overall time by an additional 10 hours (5 hours each) to reflect any other work attributable to Henley or Sikes. Exhibit 1.

Like Mr. Franklin, Mr. Hightower eliminated all hours expended solely in conference, communications, etc. with either Plaintiff Henley or Sikes. Exhibit 2. Mr. Hightower also reduces his overall time by an additional 4 hours to reflect any other work attributable to Henley. Exhibit 2. Mr. Hightower did not have any work solely with Sikes. Exhibits 1, 2.

Once again, Mr. Newman did not join the case until *after* the Court issued its summary judgment on December 29, 2021. Exhibits 1, 3. Accordingly, all of Mr. Newman's work was on

---

[3] Plaintiffs' counsel anticipated Mr. Newman playing a larger role in the trial of this matter. Exhibit 1. Important family matters, however, prevented Mr. Newman from attending trial. Exhibit 1. Nevertheless, Mr. Newman played an important role in getting this case ready for trial by acting with witness preparation, trial strategy, and preparing several key cross-examinations that were used at trial. Exhibit 1, 3.

the successful claims and his hours expended have not been reduced for any work on any non-successful claims.

    3.   The Reasonable Hours Claimed by Each Attorney

Based the foregoing, the following amounts of hours were reasonable billed by each attorney for work on this matter. *See* Exhibits 1, 1B, 1C, 2, 2B, 3, 3B, and 6.

| Lawyer | Reasonable Hours Expended |
|---|---|
| Tanner G. M. Franklin | 255.75+20=275.75 |
| Sean F. Hightower | 258.25 |
| Benjamin J. Newman | 38.9[4] |

**B. Reasonableness of Plaintiffs' Attorneys' Hourly Rates**

    1.   Tanner G. M. Franklin

Mr. Franklin served as lead counsel throughout this lawsuit and handled all the briefing and discovery issues in the case. Exhibit 1. At trial, Mr. Franklin conducted *voir dire*, presented opening statement, presented closing argument, and cross and directed most witnesses. Exhibit 1.

Mr. Franklin has been a licensed Texas attorney since November 2015. Exhibits 1, 1A. Mr. Franklin graduated *magna cum laude* from Baylor Law School and was a law clerk to Judge Crone in the Eastern District. Exhibits 1, 1A. Afterwards, Mr. Franklin spent two and a half years at Bernsen Law Firm practicing civil litigation in state and federal court. Exhibits 1, 1A.

In May 2020, Mr. Franklin opened his own law firm in Etoile, Texas—approximately 17 miles from Lufkin. Exhibits 1, 1A. Roughly 75% of Mr. Franklin's practice is devoted to civil

---

[4] This amount is calculated by reducing Mr. Newman's total hours—40.95—by 5% to account for billing judgment.

litigation, with most of his civil cases being employment or civil rights matters in federal court. Exhibit 1.

Despite his only being licensed since 2015, Mr. Franklin has extensive experience in federal court handling primarily employment and civil rights cases, as well as other civil matters. Exhibit 1. Mr. Franklin is admitted to practice in numerous federal trial courts and has handled cases in multiple federal districts. Exhibits 1, 1A. He has also tried six cases to a jury verdict (3 state; 3 federal)—as first chair; one case as first chair to the bench in this Court; and served as a second chair in other matters. Exhibit 1.

Based upon his knowledge, training, and experience, as well as the services provided in this case, Mr. Franklin seeks a fee award of $500 per hour.

    2. Sean F. Hightower

Mr. Hightower severed as second chair throughout the case. Exhibit 2. Mr. Hightower handled client communications and management, assisted Mr. Franklin with discovery and investigation related to the case, and assisted in numerous other areas in getting this case ready for trial. Exhibits 1, 2. Mr. Hightower was also essential to developing Plaintiffs' trial strategy. Exhibit 1. At trial, Mr. Hightower assisted Mr. Franklin in all aspects of the trial, cross examined and directed multiple witnesses, and was present throughout trial. Exhibits 1, 2.

Mr. Hightower graduated from the Texas A&M School of Law (formerly Texas Wesleyan School of Law) in December 2013. Exhibits 2, 2A. He has been admitted to the Texas Bar since May 2014. Exhibits 2, 2A.

Since graduation, Mr. Hightower has practiced at James & Hightower in Nacogdoches. Exhibits 2, 2A. Mr. Hightower's practice focuses primarily on criminal defense, where he practices in both state and federal court. Exhibits 2, 2A. He has extensive experience in state and

federal court, handling over 300 contested trials, sentencings, ALR's, and motions to suppress. Exhibits 2, 2A. Mr. Hightower regularly practices in the Eastern District and is admitted to practice in the United States Court of Appeals for the Fifth Circuit. Exhibits 2, 2A.

Based upon his knowledge, training, and experience, as well as the services provided in this case, Mr. Hightower seeks a fee award of $400 per hour.

### 3. Benjamin J. Newman

Mr. Newman assisted in preparing the case for trial. Exhibits 1, 3. Originally, Mr. Newman was going to be part of the trial, however, family obligations prevented him from attending the trial. Exhibits 1, 3. Nonetheless, Mr. Newman still provided services related to the trial. Exhibit 1. Mr. Newman worked to develop a successful trial strategy; largely prepared Plaintiffs' opening statement; and prepared key cross examination outlines for Mr. Franklin to use. Exhibits 1, 3.

Mr. Newman graduated from Baylor Law School in 2015. He has been admitted to the Texas Bar since November 2016. Exhibit 3, 3A. In 2019, Mr. Newman opened his own practice focused almost exclusively on civil litigation. Exhibit 3, 3A. He has served as first or second chair in numerous state and federal cases, including a bench trial before this Court. Exhibit 3, 3A.

Based upon his knowledge, training, and experience, as well as the services provided in this case, Mr. Newman seeks a fee award of $325 per hour.

### 4. Fee Awards Requested

Based the foregoing, Plaintiffs seek the following hourly rates for their counsel.

| Lawyer | Requested Rate |
|---|---|
| Tanner G. M. Franklin | $500/hr |
| Sean F. Hightower | $400/hr |

| Benjamin J. Newman | $325/hr |
|---|---|

### C. The Lodestar Fee, After Billing Judgment and Before Adjustment Pursuant to the Rule 1.04(b) Factors

The Lodestar calculations (reasonable hourly rate x reasonable hours expended) yield the following. For Mr. Franklin, the amount is $137,875.00. For Mr. Hightower, the amount is $103,312.00. For Mr. Newman, the amount is $12,642.50. Notably, these lodestar calculations are presumptively reasonable. *Rohrmoos Venture*, 578 S.W.3d at 499; *see Hoenninger*, 2022 WL 340593, at *3.

### D. The Rule 1.04(b) factors support the presumptively reasonable lodestar figures.

In this case, the Rule 1.04(b) factors support the presumptively reasonable lodestar calculation. Plaintiffs are not seeking an upward fee enhancement and any downward fee reduction is not warranted.

Plaintiffs' expert on attorney's fees, Timothy B. Garrigan, has provided an affidavit explaining how the Rule 1.04(b) factors support the lodestar calculation. Exhibit 7. Plaintiffs also anticipate Mr. Garrigan testifying at the hearing on attorney's fees with respect to the lodestar calculation, the Rule 1.04(b) factors, the Rule 1.04(b) factors applied to this case, the reasonableness of the hourly rates, the reasonableness and necessity of the hours expended, and the total fee award sought.

Plaintiffs also direct the Court to the several other fee awards in the Eastern District that comport with the fee awards sought by Plaintiffs' counsel.

- In *McClain v. Lufkin Indus., Inc.*, 9:97-cv-063 (Doc. 621) at pp. 12–13 (E.D. Tex. Lufkin),[5] Judge Clark approved an $400/hr. rate for Timothy B. Garrigan in a race discrimination case. The Fifth Circuit affirmed the award for Mr. Garrigan. *McClain v. Lufkin Indus.,*

---

[5] The *McClain* case included attorney fee awards for numerous attorneys.

11

*Inc.*, 649 F.3d 374, 387 (5th Cir. 2011). The fee was awarded in 2009 and adjusted for inflation, the fee award would be $530.26/hr.

- In *Jackson v. Mistry Hospitality LLC*, 1:19-cv-422 (Doc. No. 49) at pp. 3-4 (E.D. Tex. Beaumont), this Court approved a $595/hr. rate in a FLSA case.
- In *Combs v. City of Huntington, Texas*, No. 9:12-cv-00210 (Doc. 101) at pp. 5–6, Page ID #: 780–81 (E.D. Tex. Lufkin), Judge Clark approved a $375/hr. rate for in an employment discrimination case. The fee was awarded in 2015 and adjusted for inflation, the fee award would be $427.34/hr.
- In *Rivera v. Evergreen Fabrication & Indus. Servs., Inc.*, No. 1:14-cv-76 (Doc. 14) at pp. 1–2, PageID #: 237–38 (E.D. Tex. Beaumont), Judge Giblin recommend awarding a fee of $350/hr. in an FLSA case. The fee was awarded in 2015 and adjusted for inflation, the fee award would be $398.85/hr.
- *In Waggoner v. VSE Corp.*, No. 5:18-cv-00058 (Doc. 155) at p. 14, PageID #: 2608 (E.D. Tex. Texarkana), Judge Schroeder approved a $650/hr. rate for an attorney licensed in 2007 in an FLSA case.
- In *Halleen v. Belk, Inc*., No. 4:16-cv-55 (Doc. 177) at p. 11, PageID #: 2547 (E.D. Tex. Sherman), Judge Mazzant approved a $500/hr. rate for a lawyer licensed in 2010 in a FLSA case filed in the Sherman Division. The fee was awarded in 2018 and adjusted for inflation, the fee award would be $510.35/hr.
- In *Halleen v. Belk, Inc*., No. 4:16-cv-55 (Doc. 177) at p. 11, PageID #: 2547 (E.D. Tex. Sherman), Judge Mazzant approved a $465/hr. rate for a lawyer licensed in 2009 in a FLSA case filed in the Sherman Division. The fee was awarded in 2018 and adjusted for inflation, the fee award would be $474.62/hr.
- *In re: Nuvectra Corp.*, No. 19-43090 (Doc. 364) at p. 3, (Doc. 364-3) at Exhibit C, p. 1, and (Doc. 364-6) at Exhibit F, p. 46 (Bankr. E.D. Tex. Sherman). In that case, the court approved fees sought by an attorney licensed in 2013 at a rate of $427.50/hr. *See id.* (Doc. No. 386) (August 12, 2020).
- In *Vassallo v. Goodman Networks, Inc.*, No. 4:15-CV-97 (Doc. 144) at pp. 11–12, PageID #: 2612–13 (E.D. Tex. Sherman), Judge Guirola (sitting by assignment) approved a $350/hr. rate for two non-first chair lawyers licensed in 2015 in a FLSA case filed in the Sherman Division. The fee was awarded in 2016 and adjusted for inflation, the fee award would be $385.83/hr. That fee was sought and approved for first-year lawyers who were part of a multi-attorney team.

These other fee awards show that the fees sought by Plaintiffs' counsel are in line with fees awards in similar employment related cases.

Moreover, this was a complex case that required substantial time, labor, and skill to prosecute. Exhibits 1-6. Indeed, Plaintiffs had overcome two motions to dismiss and a motion for summary judgment. *See* Doc. Nos. 5, 10, and 35. Defendants also fought vigorously against Plaintiffs' claims. This was not a straightforward personal injury claim or a simple breach of

contract case; rather, this was a complex employment law matter involving multiple Plaintiffs, over 10 witnesses, hundreds of pages of exhibits, and thousands of pages of discovery.

With respect to the results obtained and amounts involved, Plaintiffs could not obtain a more favorable result. The jury awarded each Plaintiff $500,000.00 in non-economic damages. Doc. No. 81. Unfortunately, Plaintiffs' damages were capped at $250,000.00 each, so Plaintiffs obtained the best possible result. Doc. No. 93.

Additionally, Plaintiffs' counsel worked on this case for over two years—May 2022 through present. Doc. No. 1 (filed May 26, 2020). Plaintiffs' counsel devoted substantial time and resources to the successful prosecution of this case. *See* Exhibits 1-6.

In short, the Rule 1.04(b)/*Johnson* factors support the lodestar fee amounts claimed.

### E. Court Costs and Other Expenses

Plaintiffs filed a Bill of Costs (Doc. No. 97), which the Clerk approved, and Defendants did not dispute. Doc. No. 99.

Plaintiffs also seek to recover $3,000.00 for services rendered by Donna Michelle Rupert. See Exhibit 1, 2, 4. Ms. Rupert assisted Plaintiffs' counsel throughout trial as a jury consultant and was present for most of the trial. Exhibits 1, 2, 4. Ms. Rupert's background in law enforcement—and particularly investigations—is valuable in researching and selecting jurors and her services were an essential part of Plaintiffs' success in this case. Exhibits 1, 2, 4. Ms. Rupert also assisted in other aspects of trial preparation. Exhibits 1, 2, 4.

### F. Post Judgment Interest on Trial Attorney's Fees and Court Costs

Plaintiffs seek to recover post-judgment interest on an award of attorney's fees and costs from the date of the judgment on the merits that establishes the right to award of fees and costs.[6]

---

[6] Plaintiffs note that post-judgment interest is not subject to the *Texas Whistleblower Act* damages cap because the cap only applies to "compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience,

*See Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 332 (5th Cir. 1995); *Robertson Cnty. v. Wymola*, 17 S.W.3d 334, 344 (Tex. App.—Austin 2000, pet. denied) (affirming an award of post-judgment interest in a *TWA* case); *see also* Tex. Fin. Code § 304.003 (providing for post-judgment interest). This Court's order on this motion should provide for interest on fees and costs from the date the final judgment was entered—July 20, 2022. *See* Doc. No. 93.

### G. Appellate Attorney's Fees

Plaintiffs anticipate DPS filing an appeal in this case. Mr. Franklin and Mr. Newman are not appellate attorneys and Mr. Hightower is not a *civil* appellate attorney. Exhibit 1.

Accordingly, Plaintiffs' counsel has secured the services of Morgan McPheeters of the McPheeters Law, PLLC to handle any appeals. Ms. McPheeters' practice is devoted to civil appeals and she has substantial experience handling appeals in state and federal courts. Exhibit 5.

Ms. McPheeters has prepared an affidavit, which is attached to this motion. *See* Exhibit 5. She typically charges $280/hr. to $350/hr. for appeals, but for a complex appeal such as this, she would charge $300/hr. to $350/hr. and believes the $350/hr. fee to be reasonable here. Exhibit 5.

Ms. McPheeters has reviewed the summary judgment order, the summary judgment briefing, and other key documents. Exhibit 5. She has also consulted with Plaintiffs' counsel regarding the likely issues that will be raised on appeal. Exhibit 5.

Based on her review of the key documents, her consultations with Plaintiffs' counsel regarding the potential appellate issues, and her professional experience in handling civil appeals, Ms. McPheeters believes that defending this case on appeal at the Fifth Circuit would take between 100-170 attorney's hours of work. Exhibit 5. Ms. McPheeters estimates an additional 50-80 attorney's hours would be necessary to respond to a petition for writ of certiorari to the U.S.

---

mental anguish, loss of enjoyment of life, and other nonpecuniary losses." Tex. Gov't Code § 554.002(c). Post-judgment interest is falls outside the enumerated items.

Supreme Court, and a further 100-150 hours of attorney's hours would be needed if the Supreme Court requested full merits briefing and arguments. Exhibit 5.

Mr. Garrigan, Plaintiffs' expert on attorney's fees, has handled dozens of civil appeals, mostly in federal court. Exhibit 6. Mr. Garrigan's estimations of the attorney hours required to defend this case on appeal are very similar to Ms. McPheeters' estimations. *Compare* Exhibit 6 *with* Exhibit 5.

Therefore, Plaintiffs ask the Court to include the following contingent appellate attorney's fees for any appeals in its order.

- $45,500.00 if an appeal is filed by DPS to the Fifth Circuit (130 hours x $350/hr.);

- $22,750.00 if a petition for writ of certiorari is filed by any party to the Supreme Court (65 hours x $350/hr.); and

- $43,750.00 if full merits briefing is requested by the Supreme Court (125 hours x $350/hr.).

Plaintiffs would be entitled to those amounts if they ultimately remain prevailing plaintiffs after all direct appeals are exhausted or become time barred.

### III.   REQUEST FOR A HEARING

Plaintiffs request a formal hearing on their motion at the Court's convenience.

### IV.   CONCLUSION AND PRAYER

For these reasons, Plaintiffs Mahan, Barton, and Riggins ask the Court to issue an order awarding them their reasonable attorney's fees, costs, and other expenses incurred in the successful pursuit of their claims against DPS for violations of the TWA.

Plaintiffs also ask the Court to award post-judgment interest at a rate of 5.5% per annum on all such amounts running from July 20, 2022, until satisfied.

Respectfully submitted,
**FRANKLIN LAW FIRM, PLLC**

_____

**Tanner G.M. Franklin**
Texas Bar No. 24082506
tfranklin@tfranklinlawfirm.com
2528 Highway 103
Etoile, Texas 75944
(936) 854-3213 — Telephone
(888) 430-2559 — Fax

**James &Hightower**
**Attorneys at Law**

/s/ *Sean Hightower*_____
**Sean Hightower**
Texas Bar No. 24086497
seanhightower@yahoo.com
115 South St.
Nacogdoches, TX 75961-5539
(936) 560-3300 – Telephone
(936) 560-5600 – Fax
**Attorneys for Plaintiffs**

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of August 2022, I electronically filed the foregoing with the District Clerk using the CM/ECF filing system, which will send notification of such filing to all counsel of record in this matter.

/s/ *Tanner G.M. Franklin*
Tanner G.M. Franklin

## **CERTIFICATE OF CONFERENCE**

I hereby certify that on the 17th day of August 2022, I conferred with Penny Maley, Lead Counsel for Defendants in this matter. I also provided a copy of the motion and billing records to Ms. Maley. Ms. Maley indicated that Defendants were opposed to this motion at this time.

/s/ *Tanner G.M. Franklin*
Tanner G.M. Franklin