**EXHIBIT 6**

# AMENDED AFFIDAVIT of TIMOTHY B. GARRIGAN

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF NACOGDOCHES | § |

BEFORE ME, a notary public in and for the State of Texas, on this day personally appeared Timothy B. Garrigan, known to me to be the person whose name is subscribed below, who being by me duly sworn, upon oath deposes and says:

### Introduction

1. "My name is Timothy B. Garrigan. I am over the age of eighteen, have never been convicted of a felony or crime of moral turpitude, and am fully competent in all respects to make this affidavit. I have personal knowledge of the facts set forth herein and they are true and correct.

2. I am a lawyer working for over 35 years at a firm known as Stuckey & Garrigan Law Offices, PLLC, in Nacogdoches, Texas. I primarily represent plaintiffs in civil rights cases, including employment cases, in the United States District Court for the Eastern District of Texas.[1] The vast majority of my cases have involved litigation that included claims for statutory attorney fees. This is such a case, an employment case in the Eastern District of Texas that includes a claim for statutory attorney fees. I am preparing this declaration to support a motion for award of attorney fees for Plaintiffs' counsel Tanner Franklin, Sean Hightower and Ben Newman ("Plaintiffs' counsel"[2]) in this case. I have no expectation of payment or financial interest in this case.

3. Most of my cases involve claims for statutory attorney fees that settled by agreement, but some of those claims have been litigated.[3] As a result of my experience, I have working knowledge of billing practices in cases involving statutory fee awards, the range of fees recovered and charged, and the effort generally required to represent plaintiffs in complex employment federal cases in the Eastern District.

4. To prepare this declaration I have reviewed attorneys Franklin, Hightower and Newman's billing records and affidavits, and discussed this case and their billing practices with each of them. I also reviewed the Court's docket sheet and selected pleadings and other filings in this case, including drafts of the fee motion that is the subject of this declaration. My review and experience with this case leaves me with the impression that it had the potential

---

[1] A recent version of my resume, listing pertinent education and experience, including some of the cases I have been associated with, is attached hereto as Exhibit A.

[2] I understand other counsel may also seek award of fees for their work assisting the Plaintiffs in this matter, but this declaration only addresses statutory fees for the efforts of attorneys Franklin, Hightower and Newman.

[3] Including: *McKeever et al. v. Wood County*, TY-85-475; *McClain, et al., v. Lufkin Industries*, 9:97cv063 (See *McClain v. Lufkin Industries*, 649 F.3d 374 (5th Cir. 2011), and; *Morrow, et al. v. City of Tenaha, et al.*, 2:08cv288 (See Order of November 15, 2017, awarding fees).

to be extremely complex and labor intensive, but has been handled very efficiently and effectively by plaintiffs' counsel.

5. To summarize the case:  In 2018 several DPS Troopers working across several counties in East Texas approached Attorney Hightower, a Nacogdoches criminal defense lawyer less than five years out of law school, because DPS was retaliating against the Troopers – threatening their law enforcement careers- because they opposed DPS's requirement of illegal quotas for traffic stops. In September, 2020 Attorney Franklin, another young attorney less than five years out of law school, joined forces with Attorney Hightower, to represent five of the Troopers in this lawsuit. On the eve of trial in 2022 Attorney Newman joined Attorneys Hightower and Franklin to try the case for three remaining plaintiff Troopers. At trial plaintiffs won a verdict of $1.5 million, *twice* the limit for the award under Texas law. Plaintiffs now seek a statutory fee award recoverable under the Texas Whistleblower Act.

## Billing Practices

6. As a practical matter, lawyers anticipating recovery of statutory attorney fees must show the reasonableness and necessity of the time and hourly rate(s) used to calculate the fees sought.

7. The reasonableness and necessity of time spent by each lawyer is normally shown by description of the particular services performed, when they were performed, and the time reasonably required to perform them. The description of an activity need not be excessively detailed but should permit a lawyer to understand, in the context of the case, each activity for which compensation was sought and whether the activity was solely concerned with a discrete wholly unsuccessful claim. Lawyers are strongly encouraged to show these components with billing records based on contemporaneous records, but such records are not required as long as reasonableness and necessity can be assessed. Lawyers should also make a good faith effort to exclude time spent that was excessive, redundant or otherwise unnecessary, just as lawyers traditionally paid by their clients are ethically required to do.

8. Plaintiffs' counsels' billing practices are more than sufficient for an assessment of the reasonableness and necessity of the fees sought.

### *Attorney Tanner Franklin's billing practices.*

9. Attorney Franklin's billing practices and records conform to the traditional and current expectations of attorney fee billing records encouraged to be used in determining statutory fee awards. From my review, it is apparent that Attorney Franklin's billing practices use a well-established proprietary time keeping program that uses contemporaneous entries to record and produce billing records reflecting the date, a brief description of the activity billed ("Notes"), and the amount of time billed (in tenths of an hour) for that activity.

10. For instance, the first entry in Attorney Franklin's billing records reflects that on May 11, 2020 he spent a .3 of an hour on a phone call with Attorney Hightower. Because it is Attorney Franklin's first entry in the case it appears likely that the call covered an introduction to the case as a whole, but of course the contents of such a call are privileged.

From the billing entry, such activity, and the time spent, appears to me to be reasonable and necessary to the case, and consistent with my own experience. My review of a broad sample of Attorney Franklin's time entries, particularly in conjunction with the docket sheet and some of the filings, reflects that Franklin's billing entries are habitually straight forward, readily understood, and include the information expected to substantiate a reasonable statutory fee award.

11. Attorney Franklin's billing records also reflect his use of billing judgment to adjust for and exclude from billing time spent that was excessive, redundant or otherwise unnecessary. An example is his first entry of May 18, 2020, reflecting he spent 1 hour preparing for a meeting with Attorney Hightower and the plaintiffs. His description of the activity also reflects that for that full hour spent (parenthetically noted in the "Notes" column) he only billed for .3 of an hour (in the "Quantity" column), excluding .7 of an hour from the billing as a billing judgment (i.e., because he deemed .7 of that hour to be excessive, redundant or otherwise unnecessary). Attorney Franklin's billing records include numerous other entries similarly showing other exercises of billing judgment. In other communication Attorney Franklin confirmed that his staff permits him to efficiently focus on the activities that require his attorney skills, which helps to reduce his need to exercise billing judgment..

12. Attorney Franklin's Affidavit also reflects that, as an additional exercise of billing judgment and out of an abundance of caution, he also omitted an additional 2.5% of his reasonably billed time to account for any other billed time that might be objected to as unproductive, duplicative, or not requiring attorney skills. This conservative billing practice may save the Court from needing to consider objections regarding small amounts of time or any minor errors.

13. Attorney Franklin's Affidavit reflects that he has also omitted from billing time for any of his work attributed solely to unsuccessful claims, including the First Amendment claims and all of the claims for former Plaintiffs Sikes and Henley dismissed on summary judgment.

14. Attorney Franklin's Affidavit also reflects that he has omitted an additional 10 hours of his time to reduce compensation for his efforts that had been successful for three other plaintiffs, since that time had not also benefitted Sykes and Henley. This was a very conservative adjustment on Attorney Franklins' part.

15. My review of Attorney Franklin's billing practices in this case leads me to opine that he has very conservatively adjusted the amount of his billable time downward to avoid any reasonable objection that he generally bills for time unreasonably or unnecessarily spent on this case.[4]

16. Perhaps more important, my review of Attorney Franklin's billing practices left me with the impression that he is extremely efficient, or dramatically understating his time entries (I think mostly the former with only some of the latter).  For instance, Attorney Franklin's first entry of May 20, 2020, shows he began drafting the original complaint having billed

---

[4] My review of Attorney Franklin's billing records did not scrutinize every entry, nor does my experience as a plaintiffs' lawyer generally require such reviews. So, it remains possible that there are billing problems that I have missed that Defendant will object to. Of course, any such objections will have to await Plaintiffs' Reply.

only about 5 hours in the case.  Given the complexity of the factual circumstances that he had to consider – proving the existence of illegal quotas for traffic stops and resulting retaliation against at least three Trooper plaintiffs over the course of 20 months – that was a remarkable feat in my experience.  However, it was not unique for Attorney Franklin. His time entries from May 20 to 26, 2020, show that he billed less than 20 hours while he was drafting the original complaint before filing it, another example of efficiency that is rare in my experience. Attorney Franklin's entries for May 31, to June 26, 2021 reflect that he also spent less than 20 hours responding to Defendants' Motion for Summary Judgment-with substantial success.[5] Less than 20 hours is not insubstantial, but in my experience, Attorney Franklin's MSJ Response is a very efficient response to a potentially fatal dispositive motion in a complex case. These examples are consistent with other of his billing entries that I have reviewed, and suggest that Attorney Franklin is extremely efficient and very conservative in his billing practices.

### *Attorney Sean Hightower's Billing practices.*

17. Attorney Sean Hightower's billing practices have developed in his criminal law practice, in which he usually negotiates a fixed fee amount considering the anticipated amount of time multiplied by  an hourly rate of $400 an hour. As a result, his normal billing practices do not include keeping contemporaneous record of all his time on a case.

18. Considering that the statutory fee he seeks in this case is normally expected to be based on contemporaneously recorded records, Attorney Hightower has in this case searched his firm's other business records for contemporaneously recorded information that reflect a portion of his work on this case. He also reviewed Attorney Franklin's contemporaneous time records that reflected some of his, Attorney Hightower's, activities. The contemporaneously recorded records he found include cell phone records, notes, calendar entries, and Attorney Franklin's billing records, which represent only an arbitrary portion of his reasonable time spent on this case. As a result, Attorney Hightower's billing is dramatically understated.

19. Most of Attorney Hightower's time in this case has been communicating with the plaintiffs, which is sometimes reflected in other contemporaneous records. For instance, Attorney Hightower's earliest time entry in this case reflects a two-hour meeting with Plaintiff Riggins on September 1, 2018. This meeting resulted in a contemporaneous notation on Attorney Hightower's calendar supporting this entry. He remembers this activity as a broad ranging discussion of that Plaintiff's job-related difficulties (that are obviously privileged and need not be reflected in billing records). Such meetings are reasonable, necessary and common in my experience.  Attorney Hightower's billing records reflect many similar entries. See, for instance entries on April 8 and 10, July 31, 2019. Attorney Hightower

---

[5] The MSJ was filed on May 26, 2021. Attorney Franklin's subsequent time entries fail to mention his receipt or initial review of the MSJ before he was drafting Plaintiffs' Response. This example suggests that Attorney Franklin at times fails to make a contemporaneous time entry, but does not reconstruct it, another conservative billing practice.

remembers that there were many other such meetings for which he did not find contemporaneous records and which are therefore not billed.

20. It was possible to find contemporaneously recorded cell phone records of some of the calls and text messages Attorney Hightower had with clients, permitting the identification of clients by their phone numbers and reflecting the duration of the calls. He aggregated the communication times for various periods, recalling that during some periods the conversations tended to be more productive than others. He then reduced the aggregated time billed accordingly for each period, often substantially, to eliminate the proportion calls he remembered to be unproductive during that time period from his billings. For instance, he has one such aggregated entry for calls and texts with clients during the period from September through December, 2018. Based on his recollection of the subjects discussed during that period, he reduced the aggregated time, rounding it down to about one-half, only 15 hours during that four-month period instead of the larger aggregated time actually spent. He made similar aggregated entries for various periods through May, 2022.

21. Many of Attorney Hightower's other entries were supported and confirmed by the contemporaneous recordings of events in Attorney Franklin's time records. For instance, Attorney Hightower's billing entries for May 11, 18 and 19, 2020, are supported and confirmed by Attorney Franklin's corresponding entries. The same is true for many other of Attorney Hightower's entries.

22. In my opinion, I find Attorney Hightower's efforts to bill for only time supported by other contemporaneously recorded information to be laudable and effective alternatives in the absence of contemporaneously recorded billing. It is important that Attorney Hightower's time on this task be compensated as fully as possible because the effort necessary to effectively manage and communicate with multiple plaintiffs (and other Trooper witnesses) in a case involving a factual situation that evolved for almost four years was likely a critical factor in the success of this case. Had Attorney Franklin tried to shoulder those responsibilities as well as his lead counsel responsibilities, he likely would have been overwhelmed and/or the trial would have been long delayed and less successful. Limiting billing to the activities that happen to be supported by contemporaneously recordings in the absence of more conventional billing systems, necessarily and dramatically understates the time reasonably spent by Attorney Hightower.

### *Attorney Newman's billing practices*

23. Attorney Newman's billing practices, like those of Attorney Franklin, use the same attorney time-keeping software based on contemporaneously recorded billing entries reflecting the information used to evaluate the reasonableness and necessity of each entry. However, most of Attorney Newman's recent fees result from a contingent percentage of recovery, which does not require or even consider the recording of billing judgment. As a result, Attorney Newman has developed a practice of simply not entering time entries for work that he contemporaneously recognizes as excessive, redundant or otherwise unnecessary or unproductive. For instance, if a phone call largely strays from the intended case related topics, he simply does not record that activity. Those exclusions already result in conservative and fair billing, but do not constitute billing judgment reflected in his billing records.

24. Attorney Newman's Affidavit, and other submissions supporting the fee award sought, reflect that he is reducing the amount he bills by 5%, to ensure that billing judgment is reflected in his billing.

25. Attorney Newman's time billed in this case is rather modest, limited to important trial preparation of particular matters late in the case, apparently one of his specialties. His time billing records reflect the information expected to be used to evaluate the reasonableness and necessity for his time billed. Each entry provides the date, a description of the activity billed ("Notes" column), the amount of time billed (in the "Quantity" column). His billing records also recite his requested billing rate (in the "Rate" column) and the amount billed for that specific task (in the "Total" column). See for instance his initial entry, reflecting that on March 30, 2022 he reviewed pleadings and the Summary Judgment Response for .85 of an hour, for which re requests payment of $276 at a rate of $325/hr. Many of Attorney Newman's time entries are similar.

26. Many of Attorney Newman's time entries are particularly detailed, making any objections to block billing particularly unlikely. For instance, one of the entries for April 1, 2022, not only describes an in-depth review for preparing notes for the opening statement, for which he bills 2.4 hours, he also identifies each document reviewed for the task and the portion of the 2.4 hours billed for each document identified. Many of his entries are similarly particularly detailed.

27. From my review and experience the activities described in Attorney Newman's billing records are all the type of important activities I would expect to be included in final trial preparation, and the times reflected are not only reasonable, but modest for tasks undertaken. In my opinion, Attorney Newman's work billed in this case was both reasonable and necessary. And the trial he helped to prepare reached an excellent result.

### 1.04(b) factors

28. Factors drawn from Rule 1.04(b) of the Texas Disciplinary Rules of Professional Conduct may also be considered in determining the reasonableness and necessity of statutory attorney fee awards if the factors are not already accounted for in the lodestar calculations. It is Plaintiffs contention that the Rule 1.04(b) factors are already subsumed in the lodestar amounts by their consideration used to establish the hourly rates and reasonable hours billed. Furthermore, Plaintiffs do not anticipate that Defendant can meet its burden to justify any downward adjustment of any lodestar amount based on these factors. Plaintiffs will use their Reply to address any unanticipated contrary argument raised in Defendants Response to the fee motion.

### Reasonableness of Hourly Rates Requested.

29. A lawyer seeking a statutory fee is also expected to show that the rate(s) they request to calculate reasonable fee(s) is in line with market rates for attorneys in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.

Rates should generally also take into account risks associated with contingency and the novelty and complexity of issues raised.

30. Particularly in light of the damages and other relief awarded as a result of the trial in this case, I agree with Plaintiffs' fee motion that their requested rates are consistent with fee awards in the Eastern District as demonstrated in Plaintiffs' Motion (and based on my own experience). To this I would add that in *Fisher v. Lufkin Industries, Inc.*, E.D. Tx. No. 2:12-cv-00423-RWS-RSP, Dkt 127 Filed 02/20/18 I was awarded fees at the rate of $500/hr and my associate Dave Craig was awarded fees at a rate of $350/hr in an individual employment case in which the plaintiff's recovery was very modest compared to the verdict or award in this case. *Fisher* was also not as complex as this case, yet I expended over 700 hours to prevail in that case. The fees requested in this case are certainly consistent with the *Fisher* fee award. See also my award at $500 an hour in *Morrow v. City of Tenaha*, C.A. 2:08-0288, Dkt 328, (Nov. 15, 2017) (Gilstrap, J.) for another complex civil rights case.

31. The increase of patent litigation has significantly increased the range of attorney billing rates for complex federal litigation in the Eastern District. Attorneys now conduct complex patent, commercial and antitrust, civil litigation earning rates of, or above, $1000 an hour in the Eastern District. In *Frew, et al., v. Suehs*, E.D.Tx. No. 3:93-CV-65, at Doc. No. 1119-12, Attorney Sam Baxter testified that his then current (2010) rate for complex federal litigation was $1000/hour and that "the going rate for attorneys' fees for complex litigation in the Eastern District range[d] from $450/hour to $800/hour, and even higher."[6] in  and of firms that regularly bill at rates of $700 per hour for associate lawyers who in such cases. I am aware of statutory fee awards in employment civil rights case in the Eastern District of Texas that range from $350 per hour to $650 per hour. I have been awarded statutory fees in employment cases based on my rate of $500 per hour. Normal rates billed for complex litigation in the Eastern District fall within the range of $350 to over $1000 per hour. In 2018 the Court awarded my fees at a rate of $500 per hour for work done as early as 2012. It is my opinion that the range of rates awarded in the Eastern District is substantially below the market rates actually paid by parties who can afford to pay their attorneys to conduct complex federal litigation in the Eastern District, and as a result the normally awarded rates cannot be expected to attract counsel with .demonstrated competence to conduct complex federal litigation for plaintiffs with meritorious civil rights cases.

32. Based on all of the above and my experience, it is my opinion that the overall fees sought in this case are also reasonable in light of the excellent results obtained.

---

[6] See *Hensley v. Eckerhart*, 461 U.S. 424, at p.447, (1983) (The concurring portion of Justice Brennan's opinion, expressly recognizing that the Senate specified that "fee awards under § 1988 should be equivalent to
fees in other types of equally complex Federal litigation, such as antitrust cases..."). It is my opinion that application of this principal would go a long way to remedying the traditional dearth of Eastern District lawyers capable of complex litigation who are also willing to represent plaintiffs with in meritorious civil rights cases.

Further affiant sayeth naught."

_____
Timothy B. Garrigan, Affiant

SUBSCRIBED AND SWORN to before me this __nd day of August 2022, by the said Timothy

B. Garrigan to certify which, witness my hand and official seal of office.

_____
Notary Public, State of Texas

AMANDA G. WILSON
Notary Public, State of Texas
Comm. Expires 08-06-2024
Notary ID 132609284

8